1 WS 496
24 SC 240          *{* Newell *against* Gibbs.

Upon a trial in the Common Pleas in a proceeding which originated before
two justices of the peace, by a landlord to obtain possession of demised pre-
mises, it is competent for the defendant to set up as a defence, that the title of
the landlord had expired by its own limitation, or that it had been devested dur-
ing the term, and that he had the right from the owner, whose title had accrued
pending the lease, to remain in possession.

ERROR to the Common Pleas of *Bradford* county.

Eli Gibbs against Albert Newell and George W. Hollenback.
This action originated in a proceeding before two justices of the
peace, under the landlord and tenant Act, to obtain possession of a
store and dwelling-house in Wyalusing.

Albert Newell and George W. Hollenback alleged that the title
to the premises was disputed and claimed by William Griffis in
virtue of a purchase by him at sheriff's sale, and that William
Griffis had the deed of the sheriff of Bradford county for the same,
which purchase at sheriff's sale was made on the 13th day of
February 1837, and the sheriff's deed is dated the 15th day of
February 1837, being since the commencement of the lease alleged
to exist between the parties by Eli Gibbs.

Upon which allegation of Newell and Hollenback, and the affi-
davit of William Griffis, execution of the judgment of the justices
was suspended, a transcript of the proceedings certified to the
Common Pleas, and the appeal entered in that court.

On the trial of the cause in the Common Pleas, after the
plaintiff had given in evidence the record sent up from the ma-
gistrates, the defendants offered to prove as follows: That John
Hollenback entered into possession of the property in dispute
in 1818, under a deed from Stephen Charlott and wife to the
said Hollenback and William F. Dininger; that Amos York
afterwards became the owner of Dininger's interest, and by col-
lusion with the tenant of Hollenback, then in possession, obtained
exclusive possession of the property in dispute. That York sub-
sequently sold to William D. Vanhorn, who entered into posses-
sion and sold to Ezekiel Griffis who entered into possession; that
on the 10th day of September 1832, Ezekiel Griffis executed a
lease to Eli Gibbs, who entered into possession under said lease.
That the term of Eli Gibbs, under said lease, was fully complete,
and ended on the 1st day of May 1836. That on the 8th day of
May 1834, William Keeler obtained a judgment against Ezekiel

[Newell v. Gibbs.]

Griffis for the sum of $500, and that the property in dispute was sold by execution upon said judgment and bid off by William Griffis on the 13th day of January 1837, to whom the sheriff duly executed, acknowledged, and delivered his deed, dated the 15th day of February 1837. All the conveyances mentioned above were offered and also proof that Eli Gibbs had never surrendered up the possession to Ezekiel Griffis, but held over after the expiration of the lease, and after having received from Ezekiel Griffis three months' notice to quit before the expiration of the lease, and also that he had received notice to quit from William Griffis, the purchaser at sheriff's sale, previous to the institution of the proceedings in this suit, to wit, immediately after the acknowledgment of the sheriff's deed to William Griffis. To which evidence, and every part thereof, the plaintiff objected. The court sustained the objection, overruled the evidence, and, at the request of the defendants, sealed a bill of exceptions.

The defendants further offered to prove, that at the time Newell and Hollenback (against whom the possession is sought to be recovered) entered into the possession of the property in dispute, they did so under a distinct and independent title, and not under or as the tenant of Eli Gibbs; that at the time Gibbs recognised and admitted the Hollenback title under which Newell and Hollenback entered, to be good and undisputed as to the one undivided half of said property; and that Gibbs has frequently declared that there never was any such lease as the one set forth in the proceedings before the magistrates. To which evidence the plaintiff objected. The court sustained the objection, overruled the evidence, and, at the request of defendant, sealed a bill of exceptions.

Error assigned:

The court erred in rejecting the testimony offered by the plaintiffs as set forth in the bills of exception.

*Overton* and *Greenough,* for plaintiffs in error. The proof offered was, that Gibbs, the immediate lessor of the plaintiffs in error, was but a tenant by sufferance of Griffis, to whom we attorned after the expiration of Gibbs's term. Why should Gibbs be permitted to recover the possession, to which he has no right, against the consent of his own lessor, when he must immediately restore it? The Act of 21st March 1772, must be construed according to its spirit and meaning, and will not bear a construction which works an injury to the landlord.

*Newell* and *Williston,* for defendant in error, argued that the Act of 21st of March 1772, was plain in its terms, not admitting of different constructions on this point; the only title that a tenant can set up against his landlord in a proceeding under that Act

is one derived by deed or descent from the lessor or by his will.
The evidence offered in this case did not come within the proviso
of the Act, but presented the plain proposition of a tenant offer-
ing to defend himself by the evidence of a paramount title to that
of his landlord, which would defeat the object of the Act, which
was to give a summary remedy to a landlord to obtain possession
of demised premises without the necessity of proving any other
title than that he is a landlord of the defendant.

The opinion of the Court was delivered by

Rogers, J.—In an action of ejectment to recover possession of
land, evidence such as was offered, is clearly admissible.   For
although the defendant is not permitted to show that his lessor
never had title to the demised premises, he may on admitting that
he once had title, prove that his interest has expired.   As if the
lessor being tenant, *pur autre vie,* bring debt against the lessee for
rent accruing since the death of the *cestui que vie,* the tenant may
prove (not that the lessor never had title, but admitting that he
once had,) that the interest of the lessor is at an end.   Co. Lit.
47 b; 6 Co. 15, *Treport's case;* (2 *Saund.* 418 n).   So in an eject-
ment by the landlord against the tenant, the tenant was permitted
to show that the landlord's title had expired; although it was
agreed that he could not have been permitted to prove that the
landlord never had title.   *Syburn* v. *Slade,* (4 *T. R.* 682) ; *Doe
dem. Jackson* v. *Rambotham,* (3 *Maule & Selw.* 516).   *Syburn* v.
*Slade,* was the case of a sub-lessee, as here, who defeated his
lessor by proof that his title had expired.   The doctrine is per-
haps to be taken with this qualification, that it must appear that
defence is made at the instance, or at least with the knowledge
of the original lessor, or owner of the demised premises.   But it
is said that the lessor cannot be prevented from recovering the
possession, when he pursues the remedy provided by the Act of
the 21st of March 1772.   To avoid the delay and expense in-
cident to the action of ejectment, the Act of 1772 gives a sum-
mary remedy to the lessor, when the tenant holds over the tene-
ment demised to him, after the determination of his lease, but in
other respects it neither enlarges the rights of the landlord, nor
does it control or diminish the rights of the lessee, or of others
who may be interested in preserving the possession.   The lessor
is at liberty to bring ejectment, or he may pursue the remedy
given by the Act; and, if he elect the latter, after having required
the lessee to remove from the premises, he may complain to two
justices of the peace, who are required to summon twelve free-
holders in the manner pointed out in the Act, and if on hearing
the freeholders find that he had been possessed of the lands or
tenements in question, that he demised the same for a term of
years or at will to the person in possession, or some other person
under whom he claims, or came into possession at a certain yearly

[Newell v. Gibbs.]

rent, that the term is fully ended, that demand had been made of the lessee, or other person in possession, to leave the premises three months before the application, it is the duty of the justices to give judgment (of which record is to be made) that he recover the premises.  The 13th section provides, that if the tenant shall allege that the title to the lands and tenements in question, is disputed and claimed by some other persons whom he shall name, in virtue of a right or title accrued or happening since the commencement of the lease, by descent, deed, or from or under the last will of the lessor, and if thereupon the person so claiming, &c., shall on oath, &c., declare that he verily believes that he is entitled to the premises in dispute, &c., and shall become bound, &c., then, and in such cases, and not otherwise, the justices shall forbear to give judgment.  The general intention of the legislature seems to have been to limit the jurisdiction of the justices and freeholders, to the simple inquiries above stated: these they were supposed fully competent to decide; but when questions of a more serious and complicated nature may arise, involving the investigation of the rights of others, they are reserved for decision by the common law tribunal; in other words, the intention is obvious, to reserve to the Court of Common Pleas, all the jurisdiction that has not been specially delegated to the Justices' and Freeholders' Court.  This construction harmonizes the whole system.  The objection is, that this case does not come within the proviso: but this depends on how the Act is construed; whether we give it a literal or liberal construction.  The plaintiff contends that the title of the person named, must not only accrue since the commencement of the lease, but that it is indispensable that it accrue by descent or deed from him, or under his last will; that the lessor spoken of in the Act, is the immediate lessor under whom he obtained the possession; that to entitle the tenant to the benefit of the proviso, by which the proceedings are suspended, he must allege and prove that the title is in the person named, by reason of a descent cast, by deed, or from or under the last will of him from whom he rented the premises.  *Qui hæret in literâ hæret in cortice*, is a maxim which may be applied here.  The tenant, it is true, does not offer to prove a literal compliance with the directions of the Act, but he offers to show what is an equivalent, that the title of Gibbs had expired by lapse of time, and that since the commencement of his lease, the title had vested in a certain William Griffis, by virtue of a purchase at a sheriff's sale, of the interest of Ezekiel Griffis, who was the lessor of Gibbs, the plaintiff.  The tenant offers to show that Gibbs has no right to the possession, because his lease from Griffis has expired, and further that Gibbs's lessor has consented that they, the defendants, should hold the land as his tenants.  Disguise it as you may, it amounts to an attempt on the part of Gibbs, to regain the possession of the premises on an expired lease, against the consent of the owner,

[Newell v. Gibbs.]

or in other words, to turn his own landlord out of possession; for as against Gibbs it cannot be doubted that the possession of the defendants is the possession of Griffis. This cannot be done in an action of ejectment, as has been already shown; and I see no indication in the Act, of an intention to enlarge the rights of the landlord, by enabling him to do in a summary process, that which cannot be done in a common law action. Nor is any intention discernible to diminish the rights of the tenant, or rather the rights of a third person, who in certain specified cases claims adversely to the immediate lessor. Although it must be confessed the words of the Act do not embrace the case in terms, yet it comes within the equity of the statute, and every day's experience shows the utter impossibility of including every case which may arise on a statute; and hence the necessity (to prevent injustice) of looking to the general intention, disregarding the strict letter. As the case stands on the offer, Gibbs was a tenant at sufferance; his lease from Griffis had expired; he held over after notice to quit, and although some time was suffered to elapse without any proceeding against him, yet Griffis had done no act, either by acceptance of rent or otherwise, to recognise his title. As such tenant, he had no right to the possession, as against his lessor. It must be remarked that the tenant cannot in *any* proceeding, defeat the title of his landlord by an independent title. The title alleged by way of defence, must be connected with the title of the lessor, or it must be shown that the title of the lessor has been devested by an act of his own, or by descent from him. When this case is referred to the Common Pleas in the manner prescribed by the Act, the onus is thrown upon the tenant; for all the facts which would be necessary to recover before the justices, are either found by the jury, or are admitted by the tenant when he alleges the title to be in some third person.

Judgment reversed, and a *venire de novo* awarded.