## Quinn *versus* McCarty.

1. The Act of 14th December 1863 (Landlord and Tenant) gives to a single justice the jurisdiction exercised by two justices and twelve freeholders under the Act of March 21st 1772.

2. The Act of 1863 affords an ample and complete system for the settlement of controversies between landlord and tenant, where it is alleged the lessor was quietly possessed of the premises, had demised them to the tenant and had given him three months' notice to quit.

3. A lessor leased premises for "one year, with privilege of five years, providing the terms hereafter mentioned are complied with;" notice of three months to be given to the lessee "previous to the expiration of each of said years if these provisions are not complied with, or else this agreement shall be considered as renewed." The lessor alleging that the lessee had broken the covenants, gave three months' notice to quit. *Held*, that a single justice had jurisdiction under the Act of 1863.

4. Whether the lessee's right of possession had expired was a question of fact under parol testimony of the lessor to show that the condition of the lease had been broken, and that, under the act, was for the justice to decide.

5. The lapse of a specific period of time is not the only element that can enter into the question whether a tenancy has expired.

6 Under a lease providing for forfeiture for condition broken, whenever an act is done which gives the lessor a right to maintain covenant he may maintain ejectment.

7. Under the Act of 1863, the justice must hear any defence the tenant may offer.

8. The appeal, under the Act of 1863, is in place of the provisions of the 13th sect. of the Act of 1772, for withdrawing the proceeding from the justices and freeholders upon the assertion by a third party of a title adverse to the lessors; and of the Act of March 20th 1810, excluding a justice's jurisdiction when the title to land may come in question.

9. A tenant before a justice or in court on appeal may set up any defence of which he could avail himself in ejectment by his lessor.

10. The scope of an inquiry into the rights of landlords is no narrower than that of tenants.

11. Having established a tenancy the lessor may show a right to recover on any grounds or on any evidence on which he could rely in an ejectment on an alleged forfeiture for breach of condition of the lease.

12. By the lease all improvements to the buildings, &c., were to be at the expense of the lessee and remain part of the realty. On the trial of an appeal under the Act of 1863, from the judgment of a justice dispossessing the tenant, *Held*, that evidence was not admissible by the tenant to show the improvements put on by him as a basis on which to assess damages.

13. The court charged that the verdict should be for the tenant for such damages as would "fully compensate him for loss and annoyance by reason of his eviction from and deprivation of the premises." *Held* to be error; the pecuniary loss from his eviction was the measure of compensation the defendant should have recovered had he been entitled to a verdict.

14. Brown's Appeal, 16 P. F. Smith 155; Heritage *v.* Wilfong, 8 P. F. Smith 137; Koontz *v.* Hammond, 12 P. F. Smith 177; Newell *v.* Gibbs, 1 W. & S. 496, followed.

March 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Pike county :* Of January Term 1876, No. 123.

[Quinn *v.* McCarty.]

The proceedings in this case were under the Landlord and Tenant Act of December 14th 1863, Pamph. L. 1125, 2 Br. Purd. 882, pl. 20. They were commenced before a justice of the peace April 15th 1874, on the complaint of John Quinn ; that on the 11th of March 1873, he was quietly in possession of a farm of one hundred and twenty-four acres, and on that day demised it to W. H. McCarty for one year from April 1st 1873, " with the privilege of five years at the annual rent of $175, under the terms and conditions of the lease ;" that three months' notice to quit had been given to McCarty to remove, &c., that he had refused, &c. ; and asking that proceedings be taken as directed by the Act of Assembly.

Process was accordingly issued against McCarty, and after hearing on the 30th of April, the justice found the complaint true, &c., and entered judgment against McCarty that he should forthwith deliver possession of the premises, and gave judgment also for $6 damages and costs ; on the same day a writ of possession was issued ; McCarty appealed, May 7th. The constable, May 8th 1874, returned to the writ that he had delivered possession to Quinn on the 4th of May.

The case was tried December 24th 1875, before Waller, P. J.

The lease was given in evidence by plaintiff; it was dated March 11th 1873, for a piece of land, describing it, containing one hundred and twenty-four acres, upon which were "erected a dwelling-house, barn and other out-buildings, for the term of one year with privilege of five years, providing the terms hereafter mentioned are complied with by said McCarty ; said McCarty agrees to pay for the same the sum of one hundred and seventy-five dollars, payable as follows. * * * And it is hereby expressly agreed that all the improvements made to said building or dwelling-house are to be done at the expense of said McCarty, and to remain a part of the realty. * * * And the said Quinn binds the said McCarty to not take off the premises the hay, straw, and cornstalks raised thereon, but that the same should be fed and used up on the premises. And the said W. H. McCarty agrees to give peaceable possession of said property at the expiration of said term of five years to the said John Quinn, or sooner, if these conditions abovementioned are not complied with, in the same condition as when he took possession thereof, common wear and tear, and casualties which may happen by fire, or otherwise, excepted. Notice of three months must be given to the said W. H. McCarty previous to the expiration of each of said years if these provisions are not complied with by said McCarty, or else this agreement shall be considered as renewed. And it is hereby further agreed by the said Quinn that the said McCarty can immediately go on and add the improvements necessary, as suits his convenience." * * *

Also ; notice to quit, served December 31st 1873, as follows :—

[Quinn v. McCarty.]

"You are hereby notified and required to quit, remove from, and deliver up to me possession of the premises situate, &c. * * * which you now hold as tenant under me (you not having complied with the conditions of the lease between us for the same), at the end of your current term, to wit, on the first day of April, A. D. 1874." * * *

The plaintiff testified that the defendant went into possession of the farm April 1st 1873, and remained until May 1874. The hay, straw, &c., were not used up on the place; twelve to fourteen tons of hay were removed; all but three tons were taken after the notice to quit; he gave defendant notice to quit because he did not live up to his agreement.

The plaintiff gave other evidence and rested.

The defendant gave evidence in answer to plaintiff's case and offered to prove that after he went into possession under the lease, he made a large expenditure of money in enlarging the house, and put on valuable improvements, of the use and benefit of which he was unlawfully deprived by the act of the plaintiff.

This offered for the purpose of one basis on which the jury may assess damages.

This was objected to by plaintiff, because:—

1. The rental is the proper basis of damages, and the value of the improvements themselves is not the proper basis upon which to assess the damages.

2. The evidence would mislead the jury.

The evidence was admitted and a bill of exceptions sealed for the plaintiff.

Defendant said:—

"I expended about $600 in repairs and improvements of the property. Farm worth $200 per year at time he put me off; this aside from what the hotel was paying me at the time I was dispossessed. I had built up a good, very good business. It was paying me about $2000 a year profits; was not a hotel before I took it."

Both parties gave other evidence and closed.

The plaintiff's fourth point, which was answered in the charge, was:—

"If the jury believe that McCarty violated the provision of the lease in removing hay from the premises, and that Quinn did not authorize such removal, then Quinn had the right to terminate the lease upon giving three months' notice to McCarty previous to the first of April 1874; and if McCarty failed to deliver up the possession in pursuance of such notice, then Quinn would be entitled to recover damages for the retention of the possession."

The court charged: * * *

"The plaintiff claims to recover upon the ground alone that defendant had sold, contrary to the provisions of the lease in evidence, a stack of hay containing some two and a half or three tons,

[Quinn *v.* McCarty.]

thereby breaking a covenant in said lease; and that having given notice to quit three months before the expiration of the year, the plaintiff had a right to terminate the lease and take the proceedings in this case before the justice; and that now on the appeal, he is entitled to a verdict, if you believe that defendant violated the provisions of the lease in removing hay from the premises without authority from plaintiff. As we dispose of this case in our answer to plaintiff's points, we will answer these points. We affirm the first three points as stated. [In answer to the fourth point, we say this point is not well stated. The jury must find from the evidence, facts as a basis of a conclusion asked for. The belief of the jury cannot be the basis of a finding, unless that belief is produced by the evidence in the case. We are asked in this point to instruct you, substantially, that a violation of covenants in a lease authorizes a lessor to terminate the lease, and gives jurisdiction to a justice of the peace to take cognisance of and decide the case under the Act of 1863. We think that act only applies to the plain case of determination of a lease by its own limitations, or term, and that it does not confer upon justices jurisdiction in cases of covenants, and if the justice does not derive his jurisdiction from the express terms of the act, such jurisdiction cannot be conferred by the parties, and especially by a lessor against the consent of the lessee. We therefore negative this the fourth point of plaintiff], [and instruct you that your verdict should be for the defendant for such damages as in your judgment, from all the evidence, will fully compensate him for loss and annoyance by reason of his eviction from and deprivation of the premises described], and you will further find that the defendant shall have restitution of the possession of the property described in the lease."

The verdict and judgment were as follows:—

"December 24th 1875, jury find for defendant the sum of one hundred dollars and restore said defendant to the premises. And now, to wit, December 24th 1875, the jury having found for the defendant, and having assessed his damages at one hundred dollars and awarded restitution, it is ordered and decreed that judgment be entered against the plaintiff for one hundred dollars and costs and restitution of the premises, and a writ of possession directed to be issued on payment of jury fee.

The plaintiff took a writ of error; he assigned for error,

1. Admitting the evidence contained in the bill of exceptions.

2. The answer to plaintiff's point.

3, 4. The last part of the charge included in brackets.

*W. H. Jessup*, for plaintiff in error.—The court should require of justices of the peace under the Landlord and Tenant Acts only such substantial compliance with the letter and spirit of the statute as would generally be within the competence of the magistrates:

Snyder v. Carfrey, 4 P. F. Smith 93. The Act of 1863 provides an ample remedy to recover possession of leased premises when it is alleged the term has expired. It gives no more rights to the landlord than to the tenant. The tenant can prove any and every defence to the landlord's claim: Brown's Appeal, 16 P. F. Smith 155. The inquiry of the justice is, has the tenancy terminated and has the requisite notice to quit been given: Koontz v. Hammond, 12 P. F. Smith 177. There is nothing in the act that confines the justice to any particular kind of evidence, or the plaintiff to any particular mode of proving the fact. The defendant is not confined to the lease for defence. He may set up any defence before the justice or on appeal that would avail him in an ejectment: Newell v. Gibbs, 1 W. & S. 496; Debozear v. Butler, 2 Grant 421; Hunter v. Jones, 2 Brewster 371. Lessor may re-enter for forfeiture: Taylor Landlord and Tenant 379; Clarke v. Cummings, 5 Barb. 339; Jackson v. Brownson, 7 Johns. 227. Entry is not necessary to complete forfeiture: Sheaffer v. Sheaffer, 1 Wright 525; Davis v. Moss, 2 Id. 346.

*F. M. Crane* (with whom were *John Nyce* and *G. G. Waller*), for defendant in error.—This being a proceeding in derogation of the common law, the authority of the justice is circumscribed by the Act of Assembly and he cannot go beyond it. The act provides that if it is proven before the justice "that the term for which the land was demised is fully ended," and that three months' notice has been given, &c., then in that case he shall give judgment against the tenant. There is no other ground on which he is empowered to act. But when questions of a more serious and complicated nature may arise, they were reserved for decision by the common-law tribunal. The intention is obvious, to reserve to the Court of Common Pleas all the jurisdiction that has not been especially delegated to the justice's court: Firmstone v. Mack, 13 Wright 392.

Mr. Justice WOODWARD delivered the opinion of the court, May 8th 1876.

The Act of the 14th of December 1863 gave to a single justice of the peace the jurisdiction in proceedings to regain possession of demised premises, which had previously been exercised under the Act of 1772 by two justices and a jury of twelve freeholders. By its provisions the duty was imposed on the magistrate to hear and decide upon the rights of the parties in every case in which it should be alleged by a lessor that he had been quietly possessed of the lands and tenements required to be surrendered; that he had demised them to the tenant in possession for a term that was fully ended; and that he had given to the tenant three months' notice of his desire to repossess the premises. The act was de-

[Quinn *v.* McCarty.]

signed to afford an ample and complete system for the settlement of all controversies of this kind : Brown's Appeal, 16 P. F. Smith 155. In the present case the plaintiff had leased the property in dispute to the defendant for the term of one- year, with the privilege of an extension for five years, provided the terms of the lease should be complied with throughout that period. One of the stipulations of the instrument was in these words : "Notice of three months must be given to the said W. H. McCarty previous to the expiration, of each of said years, if these provisions are not complied with by the said W. H. McCarty, or else this agreement shall be considered as renewed." Upon the allegation that the defendant had violated his covenants, this proceeding was instituted by the plaintiff. The court below instructed the jury that the Act of 1863 "only applies to the plain case of determination of a lease by its own limitation, or term, and that it does not confer upon justices jurisdiction in cases of covenants." A verdict was accordingly directed in favor of the defendant.

The limit within which the court confined the power of the magistrate was entirely too restricted. Whether the defendant's right to possession had expired or not was a question of fact under the parol testimony furnished by the plaintiff to show that the condition of the lease had been broken. By the very terms of the statute that was a question for the justice to hear and decide. Was the term "fully ended ?" The lapse of a specified period of time is by no means the only element that can enter into the consideration of the question whether a tenancy has expired. If the lease had been for five years, and had contained an express stipulation that a breach of any covenant should work a forfeiture of the lessee's estate, the right of the lessor to re-enter would have accrued on such a breach. Under a lease providing for a forfeiture for a condition broken, whenever an act has been done which gives the lessor a right to maintain covenant, he may, at his option, maintain ejectment : Jackson *v.* Brownson, 7 Johns. 227. Under the Act of 1863 it is the duty of the justice to hear any lawful defence which the defendant may offer : Heritage *v.* Wilfong, 8 P. F. Smith 137. The appeal which the act authorizes, stands in the place of the provisions of the 13th section of the Act of the 31st of March 1772, for withdrawing a proceeding from the jurisdiction of the magistrates and freeholders upon the assertion by a third party of a claim of title adverse to that of the lessor, and in place of the provision of the first section of the Act of the 20th of March 1810, excluding the jurisdiction of the justice where title to land may come in question. It is competent for the tenant, before the justice, or in court on the appeal, to set up any defence of which a tenant can avail himself in an ejectment by his lessor. He may prove that the title of the plaintiff has come to an end by expiration, by his own act, or been divested by act of law : Newell *v.* Gibbs, 1 W. & S. 496. "He may prove that he was induced to

[Quinn *v.* McCarty.]

accept the lease by fraud or misrepresentation, for that would show that there was no tenancy, and that would be fatal to the plaintiff's recovery in this proceeding :" SHARSWOOD, J., in Koontz *v.* Hammond, 12 P. F. Smith 177. The scope of inquiry into the rights of a plaintiff is limited to no narrower bounds. In the hearing before the justice, and in the trial in court, the truth in regard to the allegations of the complaint on which the proceeding has been founded is to be investigated and ascertained. A tenancy being established the plaintiff may show his right to recover on any grounds and by any evidence upon which he could rely in an action of ejectment founded on an alleged forfeiture for breach of the conditions of the lease. The question here should have been submitted to the jury.

By the terms of the agreement all improvements to the dwelling-house or building were to be made at the expense of the defendant, and to remain a part of the realty. On the trial the defendant was permitted to prove, under exception, that he had " made large expenditures of money in enlarging the house, and put on valuable improvements," in order to establish " one basis on which the jury may assess damages." If the defendant had been entitled to a verdict on the main questions in the cause, the effect of that would have been to restore to him the possession of the premises in their improved condition. If he was not entitled to a verdict he could not assert a claim for expenditures by way of set-off in this proceeding, even if he had a right under a separate contract to compensation. Peculiar and exceptional circumstances might be conceived in which such facts as these would be relevant, but no such circumstances are disclosed in this record. For the purpose for which it was offered the evidence was not competent.

The court charged the jury that their verdict should be for the defendant for such damages, as in their judgment, under the evidence, would " fully compensate him for loss and annoyance by reason of his eviction from, and deprivation of the premises." The statutory provision is, that " if the jury shall find in favor of the tenant, they shall also assess the damages which he shall have sustained by reason of his removal from the premises," under the warrant of the justice. The pecuniary loss caused by his eviction was the measure of compensation which the defendant would have had the right to recover if he had been entitled to a verdict. This, undoubtedly, was all the court intended to include, and the word annoyance was probably used inadvertently in the sense of disturbance of the lessee in the possession of the property. But the word suggests not only the idea of actual injury, but ideas of personal chagrin and mental vexation and anxiety, and for such results of a law suit any attempt to apportion money damages could result only in conjecture and caprice.

Judgment reversed, and writ of restitution in favor of the plaintiff and *venire facias de novo* awarded.