# Koontz *versus* Hammond.

1. Neither the 1st section of Act of March 20th 1810 (Justices), nor the 13th section of the Act of March 21st 1772 (Landlord and Tenant), bear on the question of proceedings under the Act of December 14th 1863 (Landlord and Tenant).

2. Under the Act of 1772, the process can be removed to court only when the tenant shall allege that the title is claimed under a right since the commencement of the lease, by descent, deed or under the will of the lessor.

3. The only remedy under the Act of 1863 for the tenant is appeal generally.

4. When proceedings under the Act of 1863 are in court by an appeal from the justice, the plaintiff must show a tenancy, which is the foundation of the jurisdiction.

5. The tenant may set up any defence which he could in an ejectment by his lessor; that his title had expired by his own act or by act of law; or that the lease had been accepted by fraud or misrepresentation, which would show there was no tenancy.

6. A jury informed the court that they could not agree, and the court ordered their discharge, but afterwards, and before the discharge had been recorded, they announced that they had agreed, and the court recorded the verdict. *Held,* to be correct.

7. So long as the jury had not separated and left the court-room, and their discharge was not recorded, the verdict might be received.

May 11th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Bedford county :* No. 36, to May Term 1868.

The proceedings in this case were under the Landlord and Tenant Act of December 14th 1863 (Pamph. L. of 1864, p. 1125, Purd. 1341). They were commenced before a justice of the peace by Mary Ann Hammond against William Koontz, and brought into the Court of Common Pleas by appeal on the 14th of April 1868. The plaintiff declared in ejectment; the defendant pleaded "not guilty," and that the justice had no jurisdiction.

The premises claimed had belonged to Samuel Hammond, who by his will, dated June 23d 1846, devised to his wife, the plain-

12 P. F. SMITH—12

[Koontz *v.* Hammond.]

tiff, his " farm whereon I now reside, for and during her natural lifetime, she to keep the property together and have the land farmed, by my sons, in the same manner that is now done, and to provide for, raise and educate my minor children out of the proceeds of the said real estate. * * I direct, in case my wife should die before my youngest child should arrive of age, that my sons William and John continue to farm the place, and keep all the personal property together until the said youngest child shall arrive of age, and to provide for the support and education of all the minor children out of the proceeds " till his youngest child came of age. When his youngest child should have arrived at age after the death of his wife, his farm was to be appraised, and the sons might take it at the valuation in the order of age, or, if they all declined, it was to be sold by the executors, and in either case the proceeds were to be divided equally amongst his ten children. Under an execution against John Hammond and the plaintiff, William Hammond purchased at sheriff's sale on the 30th of August 1852, all their interest in the farm, and by this and other conveyances he became the owner, prior to February 1st 1867, of the interests in the farms of two of his brothers and half the interest of one of his sisters. On that day he conveyed all his interest in his father's estate to William Koontz, the defendant.

On the trial before King, P. J., M. Penrose testified that in February 1867, the plaintiff made a parol lease to the defendant; he was to have the property for a year from April 1st 1867; he was to farm half the land " to the shares," but was to occupy no part of the buildings. The plaintiff had been living on the land since her husband's death. The witness also proved the service of notice to quit December 31st 1867.

The defendant gave evidence that on a negotiation between the plaintiff and defendant as to the terms upon which the defendant should farm the land, it was agreed that the plaintiff and Penrose, who was a son-in-law of plaintiff, were each to take one-half of the fields, the defendant to deliver a share of the produce, &c.; if they could not get along that way they would make a new arrangement another year. The defendant claimed William Hammond's rights; the plaintiff said she was satisfied with the sale by her son William to the defendant, that it was understood that the defendant was to have William Hammond's rights; that he was to go there not as a tenant but because he had purchased William Hammond's interest.

The defendant asked the court to charge the jury:—

1. That under the will of Samuel Hammond the plaintiff could not turn her son William out, and if the defendant purchased William's interest with her consent, he had a right to farm as William had done, and the verdict should be for the defendant.

[Koontz v. Hammond.]

2. That if the jury believed that the defendant purchased William's interest with plaintiff's consent, and with the understanding that he was to take William's place, and defendant took William's place as owner and not as lessee, the verdict should be for the defendant.

3. That unless the relation between the plaintiff and the defendant is that defendant had leased the place, or a part of it, for one year, and was to surrender possession at the end of the year, the justice of the peace had no jurisdiction, and the defendant must have the verdict.

4. That the interest of Mary Ann Hammond passed to William Hammond by the sheriff's sale and deed, and that interest is now an outstanding title in William Hammond, and the plaintiff cannot recover.

5. That if Mary Ann Hammond and William Koontz thought said Koontz had a right by virtue of his purchase from William Hammond to go on the place and farm one-half of it, and he went there under such view of his right (even though the same was a mistake) the plaintiff should have brought ejectment to oust him from possession, there was no jurisdiction in the justice, and the verdict must be for the defendant.

6. Under the whole of the evidence in the case the title to the land is in dispute, the justice had no jurisdiction, and the court is requested to direct a verdict for the defendant.

The court refused to affirm the points, reserving those relating to the jurisdiction of the justice; and charged:—　*　*　*

"The plaintiff contends that this evidence taken all together establishes the relation of lessor and lessee between these parties—a tenancy either for a year or at will.

"On the other side it is argued that the defendant went into possession under his purchase from William Hammond, by and with the consent of the plaintiff, in virtue whereof he has a right to continue in possession as long as he pleases, and against the will of the plaintiff.

"[What the precise character of the defendant's right to the possession against the will of the plaintiff, has not been, as far as we can see, very distinctly defined. These parties do not stand in the relation of vendor and vendee, for the transaction exhibits none of the features of a sale. The defendant cannot be in possession as a trespasser, for all the evidence shows he took possession under an agreement with Mrs. Hammond. We submit it to you to say whether or not he was a tenant of the plaintiff, either as a tenant for a year or at will.]

"The Act of Assembly under which the proceedings in this case were commenced was intended to give the lessor an easy and simple method of regaining possession of rented property, when tenants refuse to surrender possession after receiving three months'

[Koontz *v.* Hammond.]

notice to quit.   It includes a tenancy at will as well as a tenancy for years.   A tenancy at will is determinable at the pleasure of either party ; a tenancy for years at the expiration of the time for which the premises have been leased; and in either case, where the lessor proves that three months' notice has been given, and that the tenant refuses to surrender possession, he is entitled to a judgment against the tenant that he forthwith give up the possession. This act differs in an important respect from that of 1772.   It is not made essential, as in the last-mentioned statute, that the lessor should show a certain rent has been reserved.   But if that were even necessary, the plaintiff in this case has proved that the defendant was to deliver to her the one-third of the grain and the half of the hay, a very usual rent in this country.

["The defendant has attempted to set up a title to the property, or to an interest in it paramount to the title of the plaintiff.] This he cannot be permitted to do, if you find that he is the plaintiff's tenant.   It is one of the most familiar principles of the law that a tenant cannot dispute his landlord's title.   He may, in a case like this, show that he is not a tenant—that the title of the landlord is at an end—or that the landlord, during the term, has transferred his interest to another—or, that the term for which the premises were demised, has not expired—but he cannot impeach the lessor's title, or set up a title acquired by himself, without first surrendering the possession.   *   *

"In reply to some of the views presented in these points, we say to the jury that the will of Samuel Hammond gives no rights to William Hammond to the exclusion of the rights of the widow. While it is true that she was to keep the personal property together and have the land farmed by the sons in the same manner it was done at the time the will was made, still, as we understand this provision, the farming was to be done under the supervision and control of the widow, as it was done under the supervision and control of the testator in his lifetime.   [Whatever rights William Hammond had were subordinate to those of his mother, and he could transfer no greater right to defendant or any other stranger to the estate."]

The verdict, November 21st 1868, was for the plaintiff.   The defendants filed this "*protest :*"—

"Nov. 21st 1868.   The jury in this case having sent word to the court that they could not agree, the court asked the attorneys to agree that the jury should be discharged.   After the attorneys had so agreed, the court sent word to the constable and jury that they were discharged.   Whereupon the jurors came into the court-room and were requested to go down to the prothonotary's office and receive their pay and after having partly passed across the court-room one of the jurors told the court that the jury had agreed.   Then the attorneys for plaintiff asked that the jury

[Koontz v. Hammond.]

should be sent back, to which the attorneys for defendant objected. The court having sent the jury back to their room and they having now returned, the defendant asks that the jury be polled, without waiving the objection to the order of the court in sending back the jury.'

.The court afterwards entered judgment on the verdict for the plaintiff on the reserved point.

The defendants having removed the case to the Supreme Court, assigned for error,

1. The refusal to affirm their points.

2, 3 and 4. The parts of the charge in brackets.

5. Allowing the jury to reassemble after they had been discharged.

6. Entering judgment on the reserved point.

*W. M. Hall* and *J. Cessna*, for plaintiff in error.—Where a lessee has accepted a lease by mistake, it is an exception to the rule that he cannot impeach his landlord's title: Baskin v. Sechrist, 6 Barr 163.

*G. H. Spang* and *S. L. Russell*, for defendant in error.—The agreement with plaintiff was a lease: Moore v. Miller, 8 Barr 272. The Act of 1863 (*supra*) has not the provision contained in the 13th section of Act of March 21st 1772, 1 Sm. L. 374, Purd. 614, pl. 19. The lease to Koontz was after the conveyance from Hammond: Steel v. Thompson, 3 Penna. R. 37; Essler v. Johnson, 1 Casey 350; Snyder v. Carfrey, 4 P. F. Smith 90. The sale of the sheriff did not divest the plaintiff's life estate: Kintz v. Long, 6 Casey 501. The action of the court as to the verdict was right: Walters v. Junkins, 16 S. & R. 414; Ramage v. Peterman, 1 Casey 349; Reitenbaugh v. Ludwick, 7 Id. 131.

The opinion of the court was delivered, July 6th 1869, by

SHARSWOOD, J.—Neither the first section of the Act of March 20th 1810 (5 Sm. L. 161) which excepts from the jurisdiction conferred upon justices of the peace of all causes of action arising from contract not above one hundred dollars " cases of real contract, where the title to lands or tenements may come in question," nor the thirteenth section of the Act of March 21st 1772 (1 Sm. L. 374) have any bearing whatever upon the question of proceedings under the Act of December 14th 1863 (Pamph. L. 1864, Appendix p. 1125). Under the Act of 1772 it is only when the tenant shall allege that the title is claimed by some person in virtue of a right accrued since the commencement of the lease by descent, deed, or from or under the last will of the lessor, that the process before the two justices is arrested and the contention removed to court: Cunningham v. Gardner, 4 W. & S. 120. There is no such

[Koontz *v.* Hammond.]

provision in the Act of 1863 : Heritage *v.* Wilfong, decided by this court, March 2d 1868 (8 P. F. Smith 139). The only remedy provided for the tenant is that of appeal generally. Such appeal is not, indeed, a *supersedeas* of execution, but it is enacted that if on the appeal "the jury shall find in favor of the tenant they shall also assess the damages which he shall have sustained by reason of his removal from the premises."

This case was in the Court of Common Pleas, by appeal, under the Act of 1863, where by the requirement of the law it was to be tried in the same manner as an action of ejectment. The foundation of the jurisdiction, indeed, was the existence of a tenancy. It was necessary for the plaintiff to show that the defendant was her tenant, to whom she had leased or demised the premises; otherwise no exhibition of title or right of possession in her, however incontrovertible, would have authorized a verdict in her favor. It was competent, however, for the tenant, before the justice or in court on the appeal, to set up any defence of which a tenant can avail himself in an ejectment by his lessor. He might have shown that the title of the plaintiff had come to an end by expiration, by her own act, or been divested by act of law : Newell *v.* Gibbs, 1 W. & S. 496. Of course he might have proved that he had been induced to accept the lease by fraud or misrepresentation—for that would have been to show that there was no tenancy, which alone, as we have seen, would have been fatal to the plaintiff's recovery in this proceeding, without going on to controvert the plaintiff's title, or show a better one in himself or outstanding in another, as in an ordinary ejectment : Boyer *v.* Smith, 5 Watts 64 ; Brown *v.* Dysinger, 1 Rawle 408 ; Hockenbury *v.* Snyder, 2 W. & S. 249 ; Baskin *v.* Sechrist, 6 Barr 154. But the defendant below attempted or pretended nothing of the sort to bring his case within any recognised exception to the general and well established principle that a tenant shall not be allowed to controvert his landlord's title. On the contrary, he undertook to show that, before the period of the alleged lease, Mrs. Hammond, the lessor, had given her assent to his purchase of the interest of her son William, and had thereby estopped herself from turning him out of possession ; in other words, recognised a title in him not subordinate, but adverse to hers. Even, however, supposing William had under his father's will, or had acquired subsequently, such an interest during his mother's life, if afterwards Koontz took a lease from her it is very plain that he cannot set up William's title in this proceeding, whether he held it by purchase or not. He must surrender possession to her from whom he received it, and prosecute his independent title, if he has one, by a new ejectment.

By the verdict for the plaintiff, the jury found that there was a tenancy. Under the charge of the court they could not have so

[Koontz v. Hammond.]

found upon any other ground. That, in point of fact, settled the jurisdiction of the justice to originate the proceeding, which disposes of the fifth assignment of error, even if there had been a bill of exceptions to the decision of the court below on the reserved point. The first assignment is contrary to the sixth of the rules adopted September 6th, 1862 (6 Harris 578). We perceive no error material to the plaintiff in the second, third and fourth assignments, and as to the sixth, we cannot regard the protest filed by the counsel of the defendant below as any part of the record. The facts stated in that protest might have been brought upon the record by a bill of exceptions, on the refusal of the court to discharge the jury. But it is right to say that, as long as the jury had not separated and left the court room, and their discharge had not been recorded, it was lawful for the court to receive the verdict.

Judgment affirmed.