SONIA SHEER ET AL. *v.* LOUISE RATHJE

[No. 35, January Term, 1938.]

*Decided March 9th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William L. Marbury, Jr., and Jesse Slingluff, Jr.,* with

whom were *Marbury, Gosnell & Williams* on the brief, for the appellants.

*Max Sokol* and *M. William Adelson,* with whom were *Edwin J. Dickerson* and *Dickerson, Nice & Sokol* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

As the plaintiff, a woman seventy-three years of age, was walking at night eastwardly across Mt. Royal Avenue, north of its intersection with Mosher Street, in Baltimore City, she was struck by a northbound automobile. The driver of the car was the husband of its owner, who was seated beside him at the time of the accident, and both were joined as defendants in this suit by the injured pedestrian. From a judgment in her favor they have appealed. The principal exception pressed on appeal refers to the refusal of the trial court to withdraw the case from the jury. It is argued that there was no legally sufficient evidence of negligence in the operation of the car occupied by the defendants, and that negligence on the part of the plaintiff was conclusively proved.

Mt. Royal Avenue is a wide thoroughfare divided by a central park area. The vehicular way to the east of the center is used by northbound traffic, while the western section is devoted to travel in a southerly direction. It was testified by the plaintiff that she was crossing the avenue from west to east on Mosher Street, and waited on the cement footway at the end of the central park area for traffic to pass, and then started across the eastern drive way when the nearest approaching cars were beyond the next street intersection to the south, and that she was within two steps of the opposite curb and "right near the corner," when she was struck by an automobile and thrown to the ground. One of the plaintiff's witnesses testified that, just before the accident, he was waiting in his car at the intersection of Mt. Royal Avenue and Mosher Street for an opportunity to turn to his left northwardly on the avenue; that he did not

see any pedestrians to his left, as he was looking to his right for the passage of cars from the south. He said: "The first I knew of anything happening was when I heard screeching of brakes. I turned and saw somebody going down and the machine stopped. I then turned my machine into Mt. Royal Avenue and pulled up in front of the curb in front of 1505, which is the third house north of Mosher Street, and went back to see what had happened. I had not seen the contact between the person struck and the automobile striking her, and it is rather difficult to say where exactly in reference to the corner I saw the plaintiff falling, a thing like that happens so fast, but when we picked her up she was in front of the first house on Mt. Royal Avenue, that is in front of 1501, about three feet from the east curb of Mt. Royal Avenue and a little past the pedestrians' crossing. No. 1501 is on the north side of the intersection on the northeast corner. * * * When I got there Mrs. Rathje, the plaintiff, was sitting on the ground and Mr. and Mrs. Sheer, the defendants, were out of their machine and trying to lift her up, and were saying something about going to the hospital * * * and I took her in Mr. Sheer's machine to the Woman's Hospital for first aid treatment."

The witness said that, when he returned to Mt. Royal Avenue for his car, about an hour after the accident: "I went to the corner to see if there were any signs of anything on the street. * * * I could see where Mrs. Rathje had gone down, and also the skid marks of the machine, and the skid marks stopped in the pedestrians' crossing. Now, whether they were the front wheels or the rear wheels I do not know. * * * There was a lot of blood where Mrs. Sheer was. * * * Q. With reference to the blood where were the skid marks? A. South and to the west. * * * Q. Will you tell us how you identified them as the skid marks of the Sheer car? A. Well, as far as actual identification, that is a pretty hard thing to do, as far as skid marks are concerned; but just by the logic of the thing, where the mark was and where Mrs. Rathje was when she was picked up."

An objection to the quoted testimony as to the skid marks was overruled. As tending to prove that the accident occurred in the pedestrians' crossing, the testimony excepted to was in conflict with that of the defendants and their witnesses to the effect that the plaintiff was struck while attempting to cross the street some distance north of the place where pedestrians have the right of way. There was no error in the ruling on that exception. From the description by the witness of the skid marks in relation to the positions, at the time of the accident, in which he had observed the plaintiff and the automobile of the defendants by which she was injured, it could be reasonably inferred that the marks in the pedestrian crossing were made by their car, and that its contact with the plaintiff occurred in that part of the street. The admissibility of the testimony, according to its legitimate effect, was not impaired by the general expressions of the witness as to the difficulty of such an identification. The ruling was consistent with the decisions of this court in *Opecello v. Meads,* 152 Md. 29, 135 A. 488; *Kirsch v. Ford,* 170 Md. 90, 183 A. 240; *Shafer v. State,* 171 Md. 506, 189 A. 273; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 149 A. 4, 565; *Lange v. Affleck,* 160 Md. 695, 155 A. 150; and *Marine v. Stewart,* 165 Md. 698, 168 A. 891.

The question as to the legal sufficiency of the evidence to prove negligence on the part of the defendant driver must be considered upon the hypothesis that the plaintiff was in the pedestrian crossing when she was struck, because the testimony in her behalf, while contradicted, clearly tends to support that theory. If she was in fact pursuing such a course across the street, she had a statutory right of way, over vehicular traffic. Code, art. 56, sec. 209, as amended by Laws 1929, ch. 224. It was incumbent upon the driver of the defendants' automobile to be continuously watchful for the possible presence of persons on the crossing, and to have the speed of the car so reduced and controlled that it could be readily stopped or diverted in time to avoid collision with pedes-

trians who might be exposed to such a danger. *Merrifield v. C. Hoffberger Co.*, 147 Md. 134, 127 A. 500; *Deford v. Lohmeyer*, 147 Md. 472, 128 A. 454; *Parr v. Peters*, 159 Md. 106, 150 A. 34.

But the defendants rely upon testimony to the effect that as their car was crossing the street intersection it was passed on the left by another automobile coming from the rear, and that their view of the plaintiff was intercepted by the other car until it swerved to the left to avoid striking her, and that there was not then time or space enough for the driver of the defendants' car, while proceeding at a moderate speed, to succeed in his similar effort to ensure her safety, although he was able to change the course of the car sufficiently to limit the direction and force of the impact, with the result that the plaintiff was struck only by the right front fender. In view of that testimony it is argued that the defendants could not reasonably have been required to anticipate an attempt by a pedestrian to cross the street ahead of the closely approaching car which was passing the car occupied by the defendants, and that they are not properly chargeable with negligence for their omission to provide against such a contingency. That argument does not, in our opinion, give due regard to the rule as to the measure of care required of motor car operators, for the safety of pedestrians, at street intersections. The interference with the defendants' view by the passing car intensified the need of vigilance and speed control to obviate injury to a pedestrian who might be thus concealed. Another consideration is that, according to the testimony of a witness for the defendants, who was driving northwardly "right in the back of" their automobile, the plaintiff was observable as she started to cross the eastern section of Mt. Royal Avenue, when the car of the witness was about forty feet south of Mosher Street. It is to be remembered also that the plaintiff said she started over the crossing when the approaching cars were a block distant. There was consequently adequate ground for the trial court's refusal to rule in effect that the

evidence admitted of no rational inference of primary negligence.

In order to sustain the contention that the plaintiff should be judicially declared to have been guilty of contributory negligence, it would be necessary to disregard or disbelieve testimony that there were no cars near the intersection when she began to cross, and that she had nearly reached the farther side of the street when she was struck, and to assume as an undenied fact that she needlessly walked from a place of safety into the path of closely oncoming cars, and thus incurred an obvious and imminent risk of injury. That would not be a proper ground, upon the evidence in the record, for a decision that the case should have been withdrawn from the jury. *Merrifield v. C. Hoffberger Co., supra; Sheriff Motor Co. v. State, use of Parker,* 169 Md. 79, 179 A. 508; *Bielski v. Rising,* 163 Md. 492, 163 A. 207; *Taxicab Co. v. Ottenritter,* 151 Md. 525, 135 A. 587; *Shaivitz v. Etmanski,* 164 Md., 125, 164 A. 169. The issues as to both primary and contributory negligence were correctly defined and submitted to the jury by granted instructions. There was no error in any of the rulings questioned on appeal.

*Judgment affirmed, with costs.*