# LOUIS S. SUGAR *v.* JOHN HAFELE, ADMINISTRATOR

[No. 45, October Term, 1940.]

*Decided January 3rd, 1941.*

The cause was argued before BOND, C. J., PARKE, SLOAN, JOHNSON, and DELAPLAINE, JJ.

*Walter V. Harrison,* for the appellant.

*H. Vernon Eney* and *Joseph M. Wyatt,* with whom was *C. Edward Jones* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a judgment for the plaintiff, whose decedent, a pedestrian, died as a result of an automobile accident.

The only questions submitted and argued on appeal were the rulings of the court in refusing three prayers of the defendant, two of which, A and B, were for a directed verdict for the defendant. One, a demurrer prayer, the other, contributory negligence.

About one-thirty o'clock on the morning of January 22nd, 1939, John Henry Hafele was struck by an automobile owned and driven by Louis S. Sugar, the defendant, appellant, at or near the intersection of North and Collington Avenues in Baltimore City. The defendant was the only eyewitness who saw everything, but others were soon on the scene and one of them helped the victim of the accident into the defendant's automobile, wherein he was driven to St. Joseph's Hospital, where he died February 14th, 1939.

John H. Hafele lived alone on the second floor of a building No. 2140 E. North Avenue, at the northwest corner of North Avenue and Collington Avenue, the entrance to his apartment being on Collington Avenue about 20 to 25 feet north of North Avenue. He was a paper hanger by trade. Between 1:15 and 1:30 he went into the Keystone Tavern, located at the southwest corner of North and Collington Avenues, where he bought a half pint of whiskey and two lemons. Thomas E. Collins, who waited on him, said he had one glass of beer; about 2 to 2:15 o'clock Hafele left for his home across North Avenue, taking the bottle of liquor and lemons with him. He did not deny saying in a statement given four days after the accident that Hafele "drank some liquor and beer." He said Hafele "was perfectly sober." Andrew R. Edie, an employee of the tavern, "did not notice whether he was drunk or sober."

J. L. Slaysman, walking west on the south side of North Avenue, had just crossed Collington Avenue, when he heard "a crash like a thud," looked around and saw something "flying around in the air that looked like a piece of cardboard and it hit the ground, and it was a man, and I went over there and helped the man put him in the car. When I saw the automobile, it was in the intersection on the northwest corner of North Avenue near the curb. It was going west on North Avenue"; when he first saw it, "it was right in the intersection, right at the corner of the store, in front of the store. Right in the middle of the intersection where people are supposed to walk across the street. Then the car drifted down a little bit. * * * There was a very strong smell of liquor around. The alcohol was in the air, you could smell freely. * * * It was like alcohol had been spilled." He was "pretty sure the headlights were lit."

Louis S. Sugar, the defendant, testified that, as he came to the second tree past Collington Avenue "it seems as though there was some one that stumbled from the tree, had been holding onto the tree, or stumbled out in

the center of the street, and I applied my brakes and tried to swerve to keep from hitting him, yet it struck the right side of my car. My car was practically stopped when I struck it. He stumbled out from the north curb." He said there was no one "in sight and then I shouted and a tall fellow helped me put Mr. Hafele in the car." He denied that Slaysman was at the scene of the accident or helped him. Slaysman had testified that "another man got on the other side and helped pull him in the seat." He came about five minutes after the accident. Neither he nor the defendant knows who he was. The defendant said his car did not stop in the intersection, but "probably forty to fifty feet past (west) of the intersection." He said at the trial, "Mr. Hafele had been drinking." On cross-examination he said, "He seemed to be in right much pain when I put him in the automobile. I think he was dazed." In his report to the Commissioner of Motor Vehicles, he was "approaching close to Collington Avenue, when suddenly a man stepped out in front of my car and I struck him. I immediately stopped my car and on my way to the hospital, I picked up Officer Royce Batte, of the N. E. District. We continued on to the hospital and the man was so intoxicated that we had difficulty in finding out his name." Officer Batte said "he had been drinking." The officer also said, "I helped to carry him and he was in much pain. I examined Mr. Hafele's clothes. His right pocket was sopping wet. There was glass in it. There was whiskey in the pocket." The evidence is that the bottle had not been opened; the top and seal had not been broken. The defendant further testified that when he "first saw Mr. Hafele * * * I sounded my horn and applied brakes at the same time." He said his right front fender hit Hafele on the right side, so that he was facing north, with his home directly in front of him. He gave the speed of his car at 15 to 18 miles an hour. The X-ray disclosed fractures of five ribs and three in his leg, all on the right side, and a laceration of the scalp. The physician who saw him first at the hospital said, "I

smelled liquor, but that is all I can say. I noticed it in the accident room when I walked in."

Charles Kohlman, a friend of Hafele's who resided in the next block, was called about two o'clock and went to the hospital, was in the operating room, where he said he "smelled odor of alcohol only on his clothes. His clothes were saturated with it." He went back from the hospital to the scene of the accident and found the "smashed" remains of his eye glasses about two doors west of the store in the corner building; each building in that block is eleven feet wide. About daybreak he went back and found the lenses all broken into small pieces, "about a foot west of that tree." There are two small trees, according to the plat, on or about the dividing line between the store and adjoining house, and one between the 4th and 5th houses.

K. N. Speight, who has the grocery store in the corner building, over which Hafele lived, was in the rear of his store, heard brakes screech, and as soon as he had finished, he came out front and saw a man being loaded into a car, which drove on; he did not then know who it was. He found a hat, which later turned out to be Hafele's, about 6 feet west of the first tree, which would be about 17 feet from the building line on Collington Avenue. Speight also said that about three o'clock, the same morning, the defendant had returned to the scene of the accident. "He told me he seen the gentleman coming across the street and he blowed his horn. That is all he told me. He told me he was coming across from the Keystone Saloon and saw him and sounded his horn. He did not tell me anything else." The defendant denied Kohlman's statement that he saw Hafele crossing the street, but didn't deny Speight's, merely saying he did not recall seeing him that night.

This is substantially all of the evidence upon which both parties rely.

The appellant's contentions are that there is no legally sufficient evidence of his negligence, or, assuming the defendant was negligent, the contributory negligence of

plaintiff's decedent was uncontradicted and so patent as to justify the granting of his "B" prayer. The defendant's "A" prayer, which had been offered and refused at the end of the plaintiff's case, was again offered at the end of the case without modification. It read: "The jury are instructed that the plaintiff has offered no evidence legally sufficient," etc. The court's ruling on this prayer was proper, as the court cannot rule on the legal sufficiency of the plaintiff's evidence alone, after the defendant's evidence also is in. *Commercial Casualty Ins. Co. v. Zajic,* 175 Md. 368, 373, 1 A. 2nd 903, and cases there cited. We are of the opinion, however, that, even if the prayer as resubmitted had been in proper form, it should have been refused.

The contentions of both parties are centered in the respective rights of way of the defendant and the deceased, each claiming that the other had encroached on the other's superior right at the instant of the accident. The rule of the road with respect to vehicles and predestrians is contained in section 209, article 56 of the Code, Act of 1929, ch. 224, as follows: "All pedestrians shall have the right of way at street crossings in the towns and cities of this state, except where traffic is controlled * * * by traffic officers. Between street crossings in such towns and cities, vehicles shall have the right of way." Their respective duties are further defined in *Merrifield v. Hoffberger Co.,* 147 Md. 134, 142, 127 A. 500, 503, quoting *Berry on Automobiles,* (4th Ed.) p. 328, sec. 330, where it is said: "When two or more persons moving in different directions approach a crossing at the same time or in such manner that if both or all continue their respective courses there is danger of collision, then the one having the preference [under the law] is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so."

The defendant, who is the only one testifying to the collision from the instant of impact, seems to assume that no one else could have testified. Slaysman said he heard a thud, looked and saw an object in the air, which

turned out to be a man, and he says the man was hit while in the pedestrian's crossing. The statement, together with the nature of the man's injuries, and the way his hat and glasses were scattered, is inconsistent with the defendant's statement that his car was "practically stopped" when it struck the pedestrian. The defendant seems to rely on intoxication as a defense, but in that he is contradicted. Collins, who saw him while he was in and leaving the saloon, said he was "perfectly sober." Officer Batte said he had been drinking. Kohlman said he "smelled the odor of alcohol only on his clothes." Dr. Aungst said, "I smelled liquor, but that is all I can say." It is easily accounted for; his clothing had absorbed the half pint of liquor he had just bought. The defendant said he was "dazed," which coupled with the smell of his whiskey-wet clothing, could easily have created the impresion of intoxication. The evidence on that point was so contradictory as to be for the jury, though the mere fact of intoxication or sobriety is not necessarily evidence of negligence or exculpation.

The defendant's story on the witness stand is that the man stumbled in front of his car, from the north sidewalk on North Avenue at a point about thirty-five to forty feet west of the intersection. If he did this, he backed into the path of the car, as he was facing north and all of his injuries were on the right side of his body. Then it conflicts with the statement made by defendant in his report to the Commissioner of Motor Vehicles that the man had suddenly stepped in front of his car. The decedent resided in a house at the corner of North and Collington Avenues, and the direct route from the saloon was over the pedestrian's cross-walk, which was the projection of the Collington Avenue sidewalk across North Avenue. He was going in the direction of his home, with defendant approaching from his right. The circumstances are all in conflict with the probabilities of the defendant's story as to where and how the accident happened. Then Slaysman put the place as the pedestrian's cross-walk. With all of these contradictions as

to material facts, the trial court could not say as a matter of law that the defendant was not negligent, or that the decedent, with the statutory right of way in his favor, was guilty of contributory negligence. In such a situation and under such circumstances, "it was incumbent upon the driver of the defendant's automobile to be continuously watchful for the possible presence of persons on the crossing, and to have the speed of the car so reduced and controlled that it could be readily stopped or diverted in time to avoid collision with pedestrians who might be exposed to such danger." *Sheer v. Rathje,* 174 Md. 79, 83, 197 A. 613, 614. This case is another illustration of the hazard of driving an automobile at night even on lighted streets. The only visibility is a short and narrow lane in front bounded by the range of headlights. When a pedestrian comes into view from either side, he often seems to come suddenly from nowhere. Instead of excusing a driver, it only adds to the degree of care required. The other point raised by the defendant is on the refusal of his third prayer, which was a follows: "The jury are instructed that if they believe from the evidence that the plaintiff's decedent could have avoided the accident complained of by the use of ordinary care on his part, then their verdict must be for the defendant."

This prayer should have been granted; it is almost a copy of the defendant's second prayer which had been rejected in *Northern Cent. Ry. Co. v. State, use of Geis,* 31 Md. 357, of which this court, said, "it ought to have been granted. It states a proposition that is sustained by all the cases upon the subject." And recently we said in *Chasanow v. Smouse,* 168 Md. 629, 178 A. 846, 847, "the advantage or preference which the pedestrian has at a street crossing does not absolve him from the duty to observe the rule of due care and caution to avoid injury; he cannot invoke the protection of the statute or rule of the road if he blindly crosses without looking for approaching traffic." But the plaintiff argues that the rejection of the prayer, even if erroneous, was harmless,

because covered by two other prayers of the defendant which were granted.

The complaint of the defendant would not be without merit, if not covered by any other instruction. *Washington, B. & A. Elec. Ry. Co. v. State, use of Kolish,* 153 Md. 119, 127, 137 A. 484; *Mutual Life Ins. Co. v. Held,* 157 Md. 551, 558, 146 A. 755; *Salisbury Coca-Cola Bottling Co. v. Lowe,* 176 Md. 230, 244, 4 A. 2nd 440; *Caledonian Ins. Co. v. Traub,* 86 Md. 86, 99, 37 A. 782. All that the prayer does is to define an act or omission of a plaintiff, which, if true, would amount to negligence on his part contributing to his injury. The plaintiff's fifth prayer and the defendant's second in effect embodied the same proposition, the defendant's fifth prayer saying that, "the jury must be satisfied by a preponderance of the evidence that the accident was caused solely by some act of negligence on the part of the defendant and without any negligence on the part of the plaintiff's decedent contributing thereto in any way." We, therefore, are of the opinion that no harm was done the defendant by the refusal of his third prayer, and the judgment appealed from should be affirmed.

*Judgment affirmed with costs.*