AGER *v.* BALTIMORE TRANSIT COMPANY ET AL.

[No. 161, October Term, 1956.]

416

*Decided May 30, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Amos I. Meyers* and *Robert S. Rody,* for appellant.

*J. Gilbert Prendergast,* with whom were *Edward O. Clarke, Jr.,* and *Clark, Smith & Prendergast* on the brief for appellees, Alan Fleischer and Rosa S., his wife.

*Hamilton O'Dunne,* with whom was *Patrick A. O'Doherty* on the brief for appellee, The Baltimore Transit Company.

PRESCOTT, J., delivered the opinion of the Court.

The appellant has appealed from a judgment on a verdict in favor of the appellees in the Superior Court of Baltimore City. The case below was a personal injury one, brought by the appellant, Virginia Ager, against the Baltimore Transit Company, Alan Fleischer and his wife, Rosa S. Fleischer. At the conclusion of the trial, the jury rendered a verdict in favor of the defendants, and from a judgment made absolute on the verdict, this appeal has been taken.

On May 11, 1954, about 3:30 in the afternoon, at the intersection of Liberty Heights Avenue and Cedardale Road, there was a collision between an eastbound streetcar of the Balti-

more Transit Company and an automobile driven by Rosa Fleischer. This automobile prior to the accident had been eastbound, but at the time of the collision it was in the act of attempting to make a lefthand turn to go north on Cedardale Road across the path of the oncoming streetcar. The track at the area in question is T-rail construction, except that at the street intersection of Cedardale Road, there is paving to allow traffic to cross the tracks, which otherwise would be impassable.

The plaintiff, who was employed as a domestic, maintains that she was seated as a passenger on the street-car, and, at the time of the collision, was bending over to recover a magazine that had slipped to the floor. She testified that she heard "this awful noise" and "fell" to the floor, striking her breast on the side of the car. She further testified that she felt pains in her body, but alighted from the car at the motor-man's request and boarded a following street-car; that upon being advised to give her name to the operator of the first street-car, she got off the second car to do so, but was prevented from doing so by a policeman; and that she experienced a "real sharp" pain in her back and neck, and fainted. At least one of the appellees disputes the fact that the appellant was in fact a passenger on the street-car at the time of the accident, and both contend that she sustained no injury, even if she were such a passenger. This gives a brief outline of the facts. Others will be added as they seem pertinent in dealing with the numerous contentions of the appellant. As she has abandoned the first of these, we shall begin with the second and follow in accordance with her numbering.

## II

At the trial below, after the taking of testimony and the court had delivered its charge, the jury retired to deliberate upon the issues in the case. After deliberating for some time, the jury returned to the jury-box and informed the judge that the members were unable to agree upon a verdict. Whereupon, the judge said, "Well, then, it is incumbent upon me, and I do discharge you from further consideration of the case." Immediately thereafter before any juror had left the

jury-box, the clerk of the court, evidently having seen or heard some indication from the jury, stated: "They have changed their minds now." The court then directed the jury to return to their chamber and deliberate further, which they did and, thereafter, returned a verdict in favor of the defendants. The appellant contends that as soon as the trial court made the above statement, the jury was rendered *functus officio* and was without further power or capacity to consider the case.

This Court at an early date, 1827, held that a verdict may be varied from by the jury, at any time before the verdict is recorded. *Edelen v. Thompson,* 2 Harris & G. 31, 34. Cf. *Bronstein v. Amer. Ice Co.,* 119 Md. 132, 138, 86 A. 131. But, ordinarily a jury should not be permitted to amend its verdict after it has been recorded and the jury dismissed. *Harris v. Hipsley,* 122 Md. 418, 89 A. 852; *Gaither v. Wilmer,* 71 Md. 361, 18 A. 590; *Williams v. New York, etc.,* 153 Md. 102, 107, 137 A. 506. Of course, in this case there was no verdict at the time the jury was directed to resume deliberation, and the proposed discharge of the jury was never recorded. It was held in the case of *Koontz v. Hammond,* 62 Pa. 177, that, although the jury had been ordered discharged, they could still render a verdict as they had not separated or left the court room and their discharge had not been recorded. We think this was a proper ruling. It would seem a vain and futile holding to require the parties to undergo another lengthy trial, with its consequent expense and consumption of time, under the circumstances stated above. Cf. 66 *A. L. R.* 542. We find no error in the trial Court's decision to have the jury consider the case further.

### III

Gordon L. Remlein, a member of the Baltimore City Fire Department, was produced as a witness for the transit company. His duties for about five years involved serving as an attendant on ambulances operated by the Department. He had completed, as a part of his preliminary training, a course in first-aid to injured persons and presumably had been assisting such people at the scenes of accidents for five years. He arrived at the scene of the collision, and found the ap-

pellant lying on the ground as though she had fainted. He testified that when he looked at appellant, he touched her eyes whereupon she started to "squint". Over objection, he said that that indicated to him that she was feigning. He explained further that when he attempted to raise her eyelid she "squinted" again and he could not open her lids at all. This indicated to him that she was resisting his attempts to open her eyes as an incident of his examination, although she appeared to be in a faint. He stated, also, that upon being revived, she walked to the ambulance without complaining of any injuries and later walked from the ambulance inside Provident Hospital.

The appellant argues that this permitted a lay witness, who did not possess the necessary professional qualifications, to render an opinion on a medical question. In the view we take of the matter, it will be unnecessary to consider generally the required qualifications of medical experts, who are persons possessing technical and peculiar knowledge in relation to matters with which the mass of mankind are supposed not to be acquainted. We do not feel that it required the professional skill of a medical doctor to qualify a witness to testify that one, who is supposed to be in a faint and "squints" her eye when the eyelid is raised, is possibly feigning or resisting an attempt to open her eye. If this be not a matter of general knowledge, it certainly must be known by every ambulance attendant of five years experience, who has taken a course in first-aid to injured persons. There was no error here.

## IV

The appellant argues next that, as Dr. Mostwill, a witness called by one of the appellees, on cross-examination stated that in his one examination of the appellant the presence of a disc injury could not be "ruled out", this was sufficient to submit to the jury the issue of whether the appellant did in fact have a disc condition. The submission of such a question necessarily involved also the question of whether such disc condition, if it were found, was caused by the alleged torts of the appellees, a subject upon which no evidence was offered. It is clear from the evidence that the discovery of a disc in-

jury is not an exact science, and it is unlike the discovery of fractures which usually are easily detected by X-Ray photographs. Thus, it is obvious that there is no basic difference between expressing a disc condition in terms of the "possibility" of its existence, and stating that its "presence" *could not be ruled out*. Unfortunately, it is the lot of all mortals to have it said of them after a physical examination that the presence of various maladies and imperfections "cannot be ruled out". However, to submit to the jury on the basis of such testimony, the question of whether such things *actually exist* and if they do, were they *caused* by the appellees' alleged torts would be an open invitation to substitute conjecture and speculation for testimony which can form a reasonable basis for a conclusion. In matters of proof, neither the courts nor juries are justified in inferring from mere possibilities the existence of facts, and they cannot make mere conjecture or speculation the foundation of their verdicts.

Maryland cases, in accord with these well-recognized and established principles are all consistent in rejecting the proposition that the jury may form a judgment or conclusion on the basis of testimony which admits of mere possibilities and have stated in various cases that the test to be applied, whether the question involved is the existence of an injury or its cause, is reasonable probability or reasonable certainty. *B. & O. R. R. Co. v. State, etc.,* 71 Md. 590, 18 A. 969; *United Railways & Electric Co. v. Dean,* 117 Md. 686, 84 A. 75; *Abend v. Sieber,* 161 Md. 645, 158 A. 63; *Mount Royal Cab Co. v. Dolan,* 166 Md. 581, 171 A. 854; *Mangione v. Snead,* 173 Md. 33, 195 A. 329; *Langenfelder v. Jones,* 178 Md. 421, 13 A. 2d 623, 15 A. 2d 422; *Riley v. Naylor,* 179 Md. 1, 16 A. 2d 857; *Finney v. Frevel,* 183 Md. 355, 363, 37 A. 2d 923; *Brehm v. Lorenz,* 206 Md. 500, 506, 112 A. 2d 475.

The appellant cites the case of *Langenfelder v. Thompson,* 179 Md. 502, 20 A. 2d 491. However, that case is clearly distinguishable from the immediate one. There, the basic question involved was the cause of the retroflexion and retroversion of the plaintiff's uterus. The appeal was taken because a gynecologist for the plaintiff had testified that in

his opinion "the accident in all probability" had caused this condition. A Dr. Galvin, called by the defendants, had also testified that "a rare accident" *could* produce a displacement of the uterus. Despite this, the defendants urged that this condition *could not* have been caused by trauma, and that the opinion given by the doctor invaded the province of the jury. It was on this issue of possibility or probability that this Court held the testimony was properly admitted to show that trauma *could* cause such a displacement. There was no intention in that case to overrule any of the cases immediately cited above.

As the above mentioned testimony of Dr. Mostwill was insufficient to support a rational conclusion in support of the claim of the plaintiff relative to a possible disc injury, its consideration was properly withdrawn from the jury.

## V

We are unable to discover any merit in the next point raised by the appellant. She asserts that it was reversible error for the trial court to have stated in his charge to the jury that there was a "sharp conflict" in the evidence regarding whether the appellant was injured in the collision. A reading of the record discloses that this was a fact, and the trial judge was fully justified in so stating, after having told the jury that they should determine the facts, and what he said concerning the facts was not binding upon them. Gen. Rules of Prac. and Proc., Part Three, III, Trials, Rule 6 (b) (2). New rule 554 b 2.

## VI

We are, likewise, unable to discover any merit in the next claim of the appellant. She argues that it was reversible error for the court to have instructed the jury that under the evidence it was possible for them to return a verdict in favor of both defendants, because such a verdict could only be predicated upon one possibility, namely, that the appellant was not injured in the accident. If we assume, without deciding, this predicate to be true, it is, nevertheless, peculiarly within the province of the jury to determine whether or not the appellant actually received injuries that resulted from the collision; consequently, this instruction failed to constitute error.

## VII and VIII

The appellant further complains that the trial judge in his charge placed too much emphasis on the fact that the burden of proof was on the appellant and that one of the questions for the jury's decision was whether the appellant was injured. She states that this emphasis was supplied by repetition of these facts by the court. What the judge actually did was: he first delivered the main portion of his charge; and then he read to the jury, as a part of the charge, certain written prayers that had been presented by counsel. This did result in repetition. There can be no question that as a general rule neither instructions nor any of the postulates contained therein should be unduly repeated, since the tendency is to mislead and confuse the jury by placing excessive emphasis on particular points. 53 *Am. Jur., Trial,* sec. 559; 88 *C. J. S., Trial,* sec. 340. Cf. the following cases: *Pettigrew v. Barnum,* 11 Md. 434, 451; *Green Ridge, etc. v. Brinkman,* 64 Md. 52, 61, 20 A. 1024; *Storr v. James,* 84 Md. 282, 290, 35 A. 965. However, as soon as the repetitious nature of his charge was called to the court's attention, he immediately explained to the jury what he had done, and expressly informed them that no undue emphasis was intended. While undue repetition, in an instruction, of any of the points contained therein is not to be recommended, a violation of this rule is not reversible error, unless it reasonably appears that the jury has been misled. 3 *Am. Jur., Appeal and Error,* sec. 1118. After a careful reading of the court's charge, we are unable to conclude that the jury was confused or frustrated thereby.

## IX

The appellant also claims that the trial court singled out the testimony of Mrs. Fleischer, one of the defendants below, and suggested it was unworthy of belief. The short and simple answer to this is that he did not do so. The court simply stated that from her testimony alone he was unable to obtain a definite view of just how the collision occurred. He immediately told the jury that they may have another recollection, or a different understanding, of her testimony, and as her testimony involved questions of fact, it was a matter for

the jury's determination. In addition, he had previously informed the jury that any comments he made concerning the facts during the charge were not in anywise binding upon them; that they were the sole judges of the facts; and that "in the realm of facts, the jury was supreme". We find no error in this point.

### X and XI

The appellant offered into evidence an ordinance of Baltimore City (Baltimore City Code, 1950, Art. 29, sec. 21):

> "When approaching and crossing any intersecting public or private street, the person operating a street car must have the same under control and must regulate the speed of said car according to what is reasonable and proper in view of the circumstances, surroundings and location; provided, however, that in crossing any such street or intersecting public highway or private street in the thickly congested or business parts of the city, such street car shall not be operated at a rate of speed exceeding fifteen miles an hour."

She maintains that the undisputed evidence disclosed that the collision occurred in a "thickly congested" part of the city, and, therefore, it was reversible error for the court to refuse to specifically instruct the jury with reference to the duties and obligations of the operator of the street-car created by said ordinance. As the latter part of the ordinance regulates the permissible speed at intersections in the "thickly congested" parts of the city, it is important to determine whether the collision happened at such a place. The only evidence relative thereto is the testimony of Mrs. Fleischer and several pictures taken at the scene. Mrs. Fleischer, when asked if it were not "pretty thickly populated" at that particular location, answered: "That's an opinion, I don't know if it is very largely populated." She further testified there were row houses within the block on one side of the street. The pictures disclose the row houses that are set well back from the street on a terrace, and a general residential neighborhood. *Funk and Wagnalls New Standard Dictionary* (1952 Ed.)

defines congested as follows: "encumbered or obstructed by accumulated mass or numbers; overcrowded". We do not feel called upon at this time to set forth a definition of "thickly congested" that would be applicable to all locations, but we are unable to conclude that the evidence established that the *situs* of the collision in this case was in a thickly congested part of the city.

This being so, the latter part of the ordinance has no application to this case. This Court, speaking through Judge Henderson in *Crawford v. Baltimore Tr. Co.*, 190 Md. 381, 386, 58 A. 2d 680, said: "In its present form the ordinance (the one under consideration when it was not applicable to a "thickly congested or business part" of the city) adds nothing to the reciprocal duty of due care imposed upon both parties. * * * While the scene of the accident * * * was not in the open country, the type of track construction both east and west of the crossing, and its location off the travelled portion of the highway (as in the case at bar), both permit greater speed between crossings and afford notice of danger to the travelling public". See also *Gross v. Balto. Transit Co.*, 192 Md. 278, 64 A. 2d 147. The appellant, however, further contends that she was entitled as a matter of right to have the jury instructed as to every detail of the duties of the operator of the motor-car, such as his duty to keep a proper lookout, to have the car under proper control and to regulate the speed of his car according to what is reasonable and proper in view of the circumstances, etc. While there is no objection to the trial court's pointing out any and all of the reciprocal duties and obligations of the respective parties in minute detail, there is no obligation that it do so, provided the subject is fully and comprehensively covered in the charge to the jury. Gen. Rules of Prac. and Proc., Part Three, III, Trials, Rule 6 (b) (1). New rule 554 b 1. *Singleton v. Roman*, 195 Md. 241, 248, 72 A. 2d 705. The adoption of the principle suggested by the appellant could lead to requests for myriad infinitesimal elaborations, better calculated to confuse than to clarify. In the instant case, the ordinance had been admitted into evidence. Appellant's counsel had a perfect right to argue any and all of its pertinent

provisions that were within the instructions of the trial court. Her counsel, likewise, could have argued any legal duty or obligation on the part of the operator of the street-car that did not contravene the instructions of the court. We think the trial judge, in his charge, fully and properly informed the jury concerning the duties of the defendant below, The Baltimore Transit Co., and that it was not incumbent upon, but discretionary with, him as to whether or not each detailed duty or obligation should have been mentioned in his charge.

## XII

The twelfth point made by the appellant is that the trial court should have added to the charge which it gave the specific instruction that the operator of a Baltimore Transit vehicle owed a duty to his passengers to keep a proper lookout. The failure of the trial judge to make this amplification, she charges, constitutes reversible error.

While it is not unusual and, perhaps, it is preferable to grant this kind of instruction, what we have said immediately above fully answers this contention. Cf. *Sugar v. Hafele,* 179 Md. 75, 82, 83, 17 A. 2d 118; *Evans v. Capital Transit Co.* (Mun. Ct. of App. D. C.), 39 A. 2d 869, 870, 871.

## XIII

The trial court refused the appellant's fifth prayer, which in effect required a finding for the appellant against the transit company if the jury found the latter guilty of negligence contributing to the happening of the accident, because of the transit company's duty to exercise the highest care for her safety. She makes this refusal her thirteenth assignment of error. While the transit company practically concedes the correctness of the prayer, it is unnecessary for us to pass thereon, as the court included all of its essential elements in his charge. At one point therein, he stated:

> "The street car company owed the Plaintiff the highest degree of care consistent with its undertaking, which was to carry passengers safely. A street car company is not an insurer of the safety of passengers. But it must use the highest degree of care consistent with its undertaking."

And the court told the jury practically the same thing on at least two other occasions during his charge. If we assume, without deciding, the prayer were a good one, it was not compulsory that the court grant it, if the essential elements thereof were fairly covered in the charge. Gen. Rules of Prac. and Proc., Part Three, III, Trials, Rule 6 (b) (1). New rule 554 b 1. *Singleton v. Roman, supra.* We are unable to discover any substance in this complaint.

## XIV

Again, the appellant complains of repetition. This time, it concerns the trial court's stating to the jury that the transit company was not an insurer of the safety of its passengers, which he rephrased and explained to the jury. The appellant admits the accuracy of the court's statement, but complains of its repetition. What we said above in regard to repetition, also applies here. We find no error here.

## XV

The appellant argues that it was reversible error for the trial judge to have eliminated Alan Fleischer, the owner of the automobile driven by his wife, Rosa Fleischer, from the trial, because, after proof by the appellant of ownership of the car in Alan Fleischer, there was a presumption that the operator thereof was acting as Fleischer's agent within the scope of the agent's employment. The question obviously is moot. Fleischer was not in the automobile at the time of the collision. The jury found that the driver of the car, Fleischer's wife, was not liable for the alleged injuries. If this be so, the husband would not be liable merely as the principal of a blameless driver. *Barone v. Winebrenner,* 189 Md. 142, 55 A. 2d 505.

## XVI

The appellant's final complaint is that counsel for the transit company was permitted, over objection, to inquire of Dr. Merrill, one of appellant's medical experts, as to how many times the doctor had examined persons referred to him by counsel for the appellant. This Court has held on many occasions that evidence tending to establish possible interest,

bias or prejudice on the part of a witness is admissible as an aid in testing the weight and credit to be afforded his testimony. A situation, almost identical to the one in this case, arose in the Supreme Court of Missouri in the case of *Lammert v. Wells,* 13 S. W. 2d 547. That court held that the evidence tended to show the relation existing between the witness and the attorney, and was proper for the consideration of the jury as showing possible interest or bias. *See also Zarinsky v. Kansas City, etc.* (Mo. App.), 186 S. W. 2d 854, and *Dempsey v. Goldstein Bros., etc.* (Mass.), 121 N. E. 429. We hold the evidence was admissible.

As we find no error in the record, the judgment will be affirmed.

*Judgment affirmed, with costs.*