## FOLCK *v.* ANTHONY

[No. 186, September Term, 1961.]

*Decided March 15, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Aaron W. Shapiro,* with whom were *Maurice M. Bassan* and *Bassan & Shapiro* on the brief, for appellant.

*Jeffrey B. Smith,* with whom were *Paul E. Burke, Jr.,* and *Smith, Somerville & Case* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

The novel question presented by this appeal by a plaintiff against whom the jury found is whether a stop sign erected at or near a corner of intersecting streets requires a pedestrian to stop and yield the right of way to vehicular traffic approaching on the through street before entering a crosswalk at an uncontrolled intersection.

The accident which gave rise to this tort action occurred in or near one or the other of two street crossings at the intersection of Belair Road (road) and Eierman Avenue (avenue) in the City of Baltimore. The road extends generally north and south. The avenue, an east-west street, ends at the west side of the road, which is a six-lane boulevard or through street with three lanes of traffic in each direction. Neither of the crossings (or crosswalks) on the road was marked by lines or otherwise to indicate that they were pedestrian crossings. And there were no mechanical traffic signals at the intersection. There was, however, a stop sign facing west at the southwest corner of the intersection and another facing east outside of the intersection near the northeast corner, but there was none at either of the other corners.

In the early evening of September 4, 1959, the plaintiff (Howard Folck) walked from the back of his home, down the alley which intersects the east side of the road (at a point approximately opposite the north sidewalk on the avenue), crossed the road and went to a tavern on the north side of the avenue to buy beer. After purchasing a jug of beer, the plaintiff began to return by walking east along the north side of the avenue. When he reached the west side of the road, he looked both left and right and, seeing no vehicular traffic, started across the road in the northerly crosswalk formed by the prolongation of the lateral lines of the sidewalk on which

he had been walking. As he reached the middle of the road he saw an automobile to his right traveling in a northerly direction and stopped to allow it to pass. But before it passed him, the plaintiff was knocked down and rendered unconscious by an automobile operated by the defendant (James M. Anthony) traveling in a southerly direction on the west side of the road. The plaintiff did not see the southbound vehicle. Nor did he hear any warning of its approach. The defendant, who was slowing down to make a left turn into Shamrock Avenue, applied the brakes when he saw the plaintiff and turned the steering wheel to the right. He stopped almost immediately, but could not avoid colliding with the plaintiff. The evidence was conflicting in some respects. According to the defendant, the plaintiff was outside of the southerly crosswalk instead of in the northerly crosswalk. The defendant also testified that when he saw the plaintiff, he was backing, without looking, into the path of the defendant's automobile instead of standing still.

In the instructions, the trial judge advised the jury generally with respect to primary and contributory negligence and as to the respective burdens of proof of each of the parties, and then specifically informed the jury that the stop sign placed at the southwest corner of the intersection applied to pedestrian traffic as well as to vehicular traffic and, by way of explanation, stated "that means that before a pedestrian enters the Belair Road at this intersection he must use due care to see that there is no oncoming vehicle, such as this one [the defendant's], and in the exercise of that due care he should stop before he proceeds to cross." And, although the jury was further informed as to the reciprocal duties of care that each party owed to himself and to the other party, the judge declined to instruct the jury, as prayed, to the effect that the plaintiff had the right of way at the street crossing he had entered and was standing in when he was struck by the defendant.

On appeal, the appellant contends in effect that the stop sign did not restrict the right he had over vehicular traffic at the crossing in which he was injured, and that the court also

erred in refusing to give an instruction as to the doctrine of last clear chance. On the other hand, the appellee, besides a contention, with which we agree, that the last clear chance doctrine has no application to the facts of this case, further argues that the exceptions the appellant took to the instructions do not raise a question on this appeal with respect to his being entitled to a right of way instruction. We are unable to agree. For when the instructions prayed for—even though they were stated in the negative—are read together, we think they were sufficient to inform the judge that he was seeking a right of way instruction. And, having excepted to the refusal of the lower court to grant the requested instructions, the plaintiff thereby raised a question for this Court to review.

The question thus presented is whether the lower court erred in advising the jury that a stop sign applies to pedestrian as well as vehicular traffic and in not informing the jury that the pedestrian was entitled to the right of way at the crosswalks on the through street. But the more basic inquiry is whether the Legislature intended to abandon the fourteen year old rule of the road that a stop sign applies only to vehicular traffic, and substitute therefor a new rule to the effect that a stop sign should apply to pedestrian as well as vehicular traffic: the theory being that such an intention was expressed when the Legislature, at the time it added the *second exception* ("traffic-control devices") to the rule giving a pedestrian the right of way at street crossings, further stipulated that a "stop sign" was one of several other devices named in the statutory definition of "official traffic-control devices." We think there was no such legislative intent.

Three sections of the motor vehicle laws—Code (1957), Art. 66½, §§ 193, 194 and 236[1] — specifically concern the rights and duties of a pedestrian when using a public street or highway. Of these, only one section directly concerns the remaining question in this case, but there are other sections, as will be seen, which have a bearing on the question to be decided. Section 193, regulating the movement of traffic at

---

1. All code references in this opinion, unless otherwise stated, are to the Code of 1957.

intersections controlled by traffic-control signals, obviously has no application here. And the same is true with respect to § 194, which involves the rights of a blind pedestrian at uncontrolled intersections. Section 236 (a), however, has a direct and important bearing on the problem confronting us. This statutory rule of the road with its exceptions reads as follows:

> "All pedestrians shall have the right of way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or *traffic-control devices*. Between street crossings in such towns and cities, vehicles shall have the right of way." [Italics supplied.]

Furthermore, in the definition section 2 (a) of Art. 66½, it is stated that when certain words and phrases are used in the motor vehicle laws, such words and phrases shall have the meanings therein respectively ascribed to them. Thus, § 2 (a) (29) defines "official traffic-control devices" as meaning all "signs, signals, markings and devices," erected for the purpose of regulating, warning or guiding traffic that are *not inconsistent* with the motor vehicle laws. And, § 2 (a) (62) includes *pedestrians* in its definition of "traffic" while using any street or highway for purposes of travel. It would seem, therefore, that when the definitional sections are read in connection with § 236 (a), the instruction given by the lower court—to the effect that the stop sign at the intersection applied to pedestrian as well as vehicular traffic—may not have been improper. Yet, as we see it, such is not the case. However, in order to understand the effect of the exceptions on the right of way that a pedestrian has at street crossings, it is necessary to look at the legislative history of § 236 (a) as well as to consider the meaning and effect of certain parts of §§ 233 and 242 on the problem and the effect of the practices pursued by the transit and traffic department of the city in complying with the requirements of § 191.

Prior to 1918 there was no provision in the statutory law of this State with respect to the use of town and city streets by a pedestrian. But Ch. 85 of the Acts of 1918 added another

paragraph or "subsection" to § 163 of Art. 56[2] of the Code of 1912, containing the rules of the road, which provided (in the identical terms of what is now § 236 (a) minus the exceptions) that pedestrians should have the right of way at street crossings and that vehicles should have the right of way between such crossings. The first exception—control of traffic at crossings by traffic officers—was added by Ch. 506 of the Acts of 1920. Nine years later, by Ch. 224 of the Acts of 1929, other "subsections" were added to the rules of the road section (which had then become § 209[3] of Art. 56 of the Code of 1924) whereby provision was made for the designation of certain highways as *through* highways and for the erection of *stop signs* at specified entrances thereto and at intersections designated as *stop* intersections. But the second exception [to § 236 (a)] — control of traffic at crossings by *traffic-control devices*—was not added until the enactment of Ch. 1007 of the Acts of 1943 as an overall revision and re-enactment of the motor vehicle laws as Art. 66½ [Motor Vehicles] of the Code of 1924 in accordance with the recommendations of the Commission on the Revision of State Motor Vehicle Laws. See the 1943 H. B. 156.

As hereinbefore noted the definition of "traffic-control devices" includes a "stop sign" as one of such devices, but it is also therein provided that a stop sign (or other device) shall be excluded whenever its inclusion would be inconsistent with another provision of the motor vehicle laws. We note, further, that what is now § 236 (a) was re-enacted in precisely the same phraseology as the Commission had drafted it, and, which is more significant, we note that Chart No. 26, explaining the impact of the revised laws, summarized the effect of § 236 (a) as "[p]edestrians have right of way at crossings, except where traffic is controlled by officers or *signals* [italics supplied]." It would seem therefore that it was never the in-

---

**2.** Art. 56 [Licenses] concerned, among other things, the licensing of motor vehicles and (in § 163 of the Article) the rules of the road governing their operation.

**3.** Section 209 of Art. 56 in the Code of 1924 was formerly § 163 of Art. 56 in the Code of 1912.

tent of the Legislature to require a pedestrian to stop in obedience to a stop sign at the entrance to a through highway or stop intersection and yield the right of way at a street crossing in a town or city.

Other than this, it seems clear that *only* vehicular traffic is required to stop and yield the right of way to approaching vehicular traffic at an entrance to a through highway or stop intersection or at a stop sign or stop line before entering an intersection. See § 233 (a) and (b) and § 242 (c) of Art. 66½. See also § 2 (a) (60), which, though stating that vehicular traffic on intersecting highways is required to stop and yield before entering or crossing a "through highway," makes no mention of a pedestrian. Nowhere in any of these sections, or in any other section of the motor vehicle laws, is there a specific requirement that a pedestrian shall stop at a stop sign and yield the right of way to vehicular traffic.

Furthermore, we think it is significant that it has been the practice to place and maintain stop signs—in compliance with the requirements of § 191 of Art. 66½—only at such points as the city transit and traffic department deemed necessary to effectively warn vehicular (but not pedestrian) traffic of the existence of a through street or stop intersection. That is precisely what was done at the intersection with which we are concerned. There is only one stop sign at this intersection and it is a west-facing one erected on the right side of the avenue near the southwest corner of the intersection to warn eastbound vehicular traffic entering the throughway at this point. There is, however, a nearby east-facing stop sign on the right side of the alley (down which the appellant had traveled on his way to the tavern) to warn westbound vehicular traffic in the alley that it was approaching the throughway, which stop sign, although it is apparently outside of the Belair Road-Eierman Avenue intersection, is near the northeast corner of this intersection. But there is no west-facing stop sign on the left side of the avenue near the northwest corner to warn eastbound pedestrian traffic using the northerly crosswalk. Nor is there an east-facing stop sign at or near the southeast corner to warn westbound pedestrian traffic using the southerly crosswalk. So, even if it is assumed that the stop sign near the

southwest corner governed the movement of eastbound pedestrian traffic across the southerly crosswalk and that the stop sign outside of the intersection but near the northeast corner governed westbound pedestrian traffic across the northerly crosswalk, it is not likely that either of these signs was ever intended to also control the movement of eastbound pedestrian traffic across the northerly crosswalk. On the contrary, it is apparent, absent a stop sign at the northwest corner, that the transit of the plaintiff across the northerly crosswalk—which he said he was using at the time of the accident—was not unlawful under the circumstances. Cf. *Belle Isle Cab Co. v. Trammell*, 227 Md. 438, 177 A. 2d 404 (1962). To hold that the movements of an eastbound pedestrian across the crosswalks at this intersection depended on whether he was using the northerly or southerly crosswalk would certainly create an incongruous situation that was never intended.

Before 1943, when the second exception was added to what is now § 236 (a), this Court had recognized that a pedestrian had the right of way even at boulevard street crossings. See, for instance, *Sheer v. Rathje,* 174 Md. 79, 197 Atl. 613 (1938) and *Sugar v. Hafele,* 179 Md. 75, 17 A. 2d 118 (1941). In the interim between 1943 and 1957 no question had arisen similar to that presented by this case. From what has been said, we think it is clear that since 1943, as well as prior thereto, the Legislature has not intended the law to be otherwise than that a stop sign does not apply to a pedestrian at street crossings in cities and towns in this state. Cf. *Guina v. Harrod,* 266 N. W. 393 (Mich. 1936) [pedestrian has right to cross a street at a crossing even on a *through* street].

While it is true that a pedestrian, in crossing a street, must use "such caution for his own safety as a person of ordinary prudence would ·exercise under similar circumstances." *Domeski v. Atlantic Refining Co.,* 202 Md. 562, 566, 97 A. 2d 313 (1953), we reaffirm the previous holdings of this Court to the effect that where a pedestrian lawfully has the right of way at an intersection, even those posted with a stop sign, he has the further right to assume that the operator of a motor vehicle will obey the law and respect his right to complete the passage across the street crossing. *Sugar v. Hafele, supra.* See

also *Jackson v. Yellow Cab Co.,* 222 Md. 367, 160 A. 2d 612 (1960).

Since there were prejudicial errors in the instructions of the lower court, the judgment must be reversed.

> *Judgment reversed and case remanded for a new trial; appellee to pay the costs.*