738 A.2d 326

**PORTER HAYDEN COMPANY**

v.

**George WYCHE, Jr., et al.**

**No. 5406, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 30, 1999.

Dwight W. Stone, II (Gardner M. Duvall and Whiteford, Taylor & Preston LLP, on the brief), Baltimore, for appellant.

Timothy J. Hogan (William C. Burgy, Patrick Guilfoyle and Law Offices of Peter T. Nicholl, on the brief), Baltimore, for appellees.

Argued before MOYLAN, THIEME and ADKINS, JJ.

THIEME, Judge.

This is an appeal from a jury verdict in favor of appellees, George Wyche, Jr., and his wife Joan, in the Circuit Court for Baltimore City. The Wyches sued several defendants, including the appellant, Porter Hayden Company, alleging that Mr. Wyche suffered from asbestosis and lung cancer, as a result of occupational exposure to asbestos-containing products, for which the defendants were allegedly responsible.[1] When the Wyches received a jury verdict of $3,515,431.70, the court declined to apply Maryland's statutory cap on noneconomic damages in personal injury and wrongful death actions. *See* Md. Ann.Code (1974, 1995 Repl.Vol., 1998 Supp.), § 11–108,

---

1. The Wyches' case was first consolidated for trial with six others, but all of the other cases were settled or severed from the trial group. The Wyches then settled with all thirteen defendants they were pursuing except for Porter Hayden. Porter Hayden also pursued cross-claims for contribution against several co-defendants, including Babcock & Wilcox Co. and Fibreboard Corp., Owens Corning Fiberglass, Owens-Illinois, Inc., Pittsburgh Corning Corp., Rapid–American Corp., ACandS, Inc., and GAF Corporation. The jury found in Porter Hayden's favor on its contribution claims against Owens Corning, Owens-Illinois, Pittsburgh Corning, and Rapid–American. Porter Hayden later prevailed against Babcock & Wilcox and Fibreboard in a separate proceeding after the trial. As for its claim against GAF, the trial court granted GAF's motion for judgment at the close of the evidence on the grounds that insufficient evidence of Mr. Wyche's exposure to its products had been adduced.

Cts. & Jud. Proc. Article. Porter Hayden timely noted its appeal and presents us with the following questions:

1. Did the trial court err when it ruled as a matter of law that the statutory cap on noneconomic damages does not apply where the plaintiffs produced scant mixed evidence about the inapplicability of the cap and the defendant produced none?

2. Did the trial court err when it allowed the jury to award damages based on alleged risk of recurrence of a surgically removed cancer and alleged fear of a cancer recurrence where the plaintiffs did not produce evidence that showed that a recurrence was probable and evidence of physical injury caused by emotional distress?

3. Did the trial court err when it granted GAF Corporation's motion for judgment based on the plaintiff's insufficient exposure to GAF's products?

We answer "yes" to the first question and explain below. As to the second and third questions, Porter Hayden told the Court in oral argument that it would waive these issues in the event that the ruling on noneconomic damages was favorable. Because we have determined that the trial court did, in fact, err on noneconomic damages, we forego any analysis of these issues.

### *Facts*

George Wyche, Jr., worked at the Bethlehem Steel Sparrows Point steel plant from 1951 to 1993. He first worked as a laborer in the Pipe Mill for approximately twelve years, where his primary job was to sweep up the dirt and dust that accumulated at the work site.

Mr. Wyche testified that during this period he frequently worked in the vicinity of pipe coverers applying asbestos pipe covering and block insulation. He testified that these operations generated dust, and that, as part of his job, he swept up and disposed of this dust. In approximately 1963, he moved to the 56–inch Hot Strip Mill, where he worked for about a year. His duties included the frequent cleaning of dust from

industrial furnaces. From 1964 until his retirement in 1993, Mr. Wyche worked in various areas of the Rod and Wire Mill, first as a "crane follower" and eventually as a crane operator. These jobs also exposed him to asbestos dust, as he labored often in the vicinity of workers cutting and applying pipe covering material.

Mr. Wyche retired in March 1993 at the age of 62. In September 1993, the attorneys for his asbestosis claim referred him for an examination with Dr. Steven Zimmet, a pulmonologist. The chest x-ray taken at that visit revealed a "small density or a spot" on his left lung. Dr. Zimmet also noted on the x-rays what he described as interstitial markings reflecting asbestosis. In November 1993, Mr. Wyche underwent an operation in which the lower lobe of his left lung was resected, allowing the doctors to successfully remove the tumor, which was approximately one centimeter in diameter. Testing revealed the tumor to be an adenocarcinoma, a type of lung cancer. Testimony showed that cancers like Mr. Wyche's adenocarcinoma generally exist for five to ten years before they are diagnosed.

Prior to instructing the jury, the court heard motions for judgment on whether the statutory cap applied to the Wyches' claims. Porter Hayden argued that the cap should apply as a matter of law, or, in the alternative, that the jury must be allowed to decide whether the cause of action arose prior to the effective date of the cap, July 1, 1986. Conversely, Mr. and Mrs. Wyche moved for judgment, arguing that the cap did not apply, because Porter Hayden failed to prove that it should. The trial court granted their motion, ruling as a matter of law that the cap did not apply.

On May 28, 1997, the jury returned special verdicts in favor of the Wyches, awarding a total of $3,515,431.70. Of this sum, $15,431.70 represented economic damages. The jury awarded Mr. Wyche $2,000,000.00 in noneconomic damages and awarded $1,500,000.00 to the couple for loss of consortium. The trial court denied Porter Hayden's post-trial motions on the question presented in this appeal. After other post-trial proceed-

ings pertaining to contribution, the court accounted for the settlements of joint tortfeasors and entered judgment against Porter Hayden for a total of $493,205.93.

### *Discussion*

The trial court erred when it declined as a matter of law to apply Maryland's statutory cap on noneconomic damages. Simply stated, the Wyches failed to bear their burden of proof that Mr. Wyche's lung cancer existed before the effective date of the cap, and the meager evidence they adduced could just as easily have shown that the cancer originated after that date. The court below thus committed reversible error when it found that the opinion evidence presented would bolster its finding that the cap did not apply as a matter of law. Even a sympathetic plaintiff cannot doff his burden of proof or override the will of the legislature.

For the trial court to have ruled as a matter of law that the statutory cap did not apply, it needed evidence showing that the genesis of Mr. Wyche's lung cancer pre-dated July 1, 1986, which is the date that the statutory cap became effective.[2] In an earlier case involving asbestos-induced cancer, this Court determined that the cause of action for cancer "arises" when malignancy first comes into existence. *Anchor Packing Co. v. Grimshaw,* 115 Md.App. 134, 160, 692 A.2d 5,18 (1997), *vacated on other grounds sub nom. Porter Hayden Co. v. Bullinger,* 350 Md. 452, 713 A.2d 962 (1998).[3] Since the filing of the

---

**2.** A statutory cap of $350,000 for noneconomic damages, such as pain, suffering, inconvenience, or loss of consortium, applies to "any action for damages for personal injury in which the cause of action arises on or after July 1, 1986...." CJ § 11–108(b).

**3.** In *Owens–Illinois, Inc. v. Armstrong,* 326 Md. 107, 120–21, 604 A.2d 47, 53–54 (1992), the Court of Appeals drew the distinction between the *arising* and the *accrual* of a cause of action for personal injury. By using the word "arise," the legislature tied the cap to the origin of the disease rather than to the time when "through the exercise of reasonable care and diligence," *id.* at 121, 604 A.2d at 53, the plaintiff discovered or should have discovered it. The latter often becomes the date of accrual for causes of action in the context of statutes of limitation.

present appeal, this Court has further identified the origin of such cancer as the time when "the carcinogen cause[s] cellular changes which [lead] to an irreversible, fatal, or disabling disease rather than the point in time when the plaintiff inhaled the asbestos, or when the plaintiff was diagnosed or manifested symptoms of such disease." *Owens–Corning v. Walatka,* 125 Md.App. 313, 319, 725 A.2d 579, 581 (1999) (citing *Owens Corning v. Bauman,* 125 Md.App. 454, 465–90, 726 A.2d 745, 751–64 (1999)).

Mr. and Mrs. Wyche bore the burden of showing that the cancer arose before the cap applied. In *Walatka* and *Bauman,* this Court clarified that the cap applies presumptively, and plaintiffs bear the burden of proof if they contest its application. If there exists a genuine dispute of fact, that dispute must go to the jury, at the request of either party. *See Owens–Corning v. Walatka,* 125 Md.App. at 326–31, 725 A.2d at 585–588 (holding that plaintiffs bear the burden of proving inapplicability of the cap); *Owens Corning v. Bauman,* 125 Md.App. at 509–10, 726 A.2d at 772 (holding that, in cases where evidence presents a genuine dispute of fact regarding applicability of the cap, this issue must be resolved by a jury if so requested by either party).

Against the foregoing background, the circuit court's error becomes clear. First, *Walatka* teaches that the court below mislaid the burden of production on Porter Hayden. When Porter Hayden failed to introduce affirmative evidence that Mr. Wyche's cancer came into existence after July 1, 1986, the court found that the thread of evidence adduced by the Wyches showed as a matter of law that the cancer pre-dated the cut-off date. Second, although the parties were clearly in dispute over whether the cap should apply, the actual evidence adduced by the Wyches proved nothing and is insufficient as a matter of law to create a jury issue.[4] Because the proper

---

4. Had the Wyches presented evidence that tended to prove that the tumor pre-dated July 1, 1986, this issue might have gone to the jury without error under *Bauman.* Even with the paucity of evidence the Wyches adduced, Porter Hayden expressed its willingness, as a back-up

placement of the burden of proof is a settled issue, this opinion will address in more detail the weight of the evidence actually adduced by the Wyches.

Although the Wyches did present some evidence regarding the period during which Mr. Wyche's lung cancer arose, the admitted evidence alone was insufficient to satisfy their burden of production. Under *Walatka*, the plaintiff must "produce evidence that is probative with respect to when the plaintiff's disease came into existence. . . ." 125 Md. at 333, 93 A. 928. Because neither plaintiffs nor defendants introduced evidence of when Walatka's lung cancer came into existence, this Court found that there existed "no testimony that could support an inference that Mr. Walatka's mesothelioma came into existence prior to the effective date of the statutory cap." *Id.* at 334, 93 A. 928. Accordingly, we remanded the case with instructions for the lower court to apply the cap. *Id.* at 348, 93 A. 928.

In the instant case, the only probative evidence of the date of the inception of Mr. Wyche's tumor is that it was first detected by x-ray in 1993, seven years after the effective date of the statutory cap and, at diagnosis it was approximately one centimeter in diameter. As in *Walatka*, however, the plaintiffs presented no direct evidence that the tumor came into existence prior to July 1, 1986. Only one of their expert witnesses,[5] Dr. Edward Gabrielson, a pathologist, even addressed the issue briefly in his testimony:

---

position, for the court to allow the jury to decide whether the cancer pre-dated the cap. Although such a ruling would have been in error, it would have served to resolve the present controversy in the trial court.

**5.** In their brief, the Wyches also identified Dr. Samuel Hammar as one of their witnesses, and to be sure, Dr. Hammar's testimony at the trial, had it been admitted for their claim, might have been helpful to their cause. Regarding the average time from first malignancy to diagnosis, Dr. Hammar said, "[I]f you look at the years from when the cell first became malignant to this time when this was diagnosed, you can see, again, that for squamous carcinomas it was 7.2 years to the earliest diagnosis, from adenocarcinoma is 13.2 years." Although Porter Hayden seems to take issue in its reply brief with the use of *general* epidemiological testimony to draw inferences in *specific* cases, in *Grim-*

■■■■■■■■■■■■

Q:   And it would be your best estimate that the first time he would have had a cancer cell,—a cancer cell or cancer cells in his body would have been five to ten years from the date of his diagnosis?

Mr. Burgy:  Objection as to form.

The Court:  Overruled.

A:   I think that is a reasonable estimate.  Again, adenocarcinoma is a relatively slow-growing type of lung cancer.  So, I would probably push it toward the longer interval of that five to ten-year window.

All that one can infer from Dr. Gabrielson's estimate is that the tumor *may have* pre-dated the 1986 cut-off date—or that it *may not have*.  If the tumor began forming five or six years prior to 1993, the cap would apply.  If it began forming seven or more years prior to 1993, the cap would not apply.  The testimony proves nothing.  Without additional evidence, Dr. Gabrielson's comment alone leaves the trier of fact no more informed than the court in *Walatka*, where neither side presented evidence.  Dr. Gabrielson's comment that he would "probably push it toward the longer interval of that five to ten-year window" only emphasizes the non-probative quality of his testimony.

■■■■■  Furthermore, the fact that Dr. Gabrielson testified as an expert avails the Wyches nothing when his testimony regarding the cancer's date of origin was insubstantial.  Although Porter Hayden gives talismanic importance in its brief to the words "reasonable degree of medical certainty," it is clear when one compares the handling of other questions in

---

*shaw,* this Court accepted such testimony about the average time frame between malignancy and diagnosis for mesothelioma as probative.  115 Md.App. at 165, 692 A.2d at 20–21.

It should be noted, however, that the plaintiffs in *Grimshaw* asked *multiple* expert witnesses to address this issue.  The jury thus had plenty of grist for consideration.  Here, in contrast, Dr. Gabrielson was the *only* witness to address the issue for Mr. Wyche's claim.  More importantly, the trial court did not allow Dr. Hammar to testify specifically as to Mr. Wyche, because he was not identified prior to trial as a witness for Mr. Wyche.

the transcript that Dr. Gabrielson addressed this issue with considerably less force than he did the others. In fact, his testimony was so carefully hedged that it seems to be little more than speculation. Expert testimony is admissible when it would assist the jury in those instances when " 'form[ing] a rational judgment from the facts requires special training or skill.' " *Davidson v. Miller,* 276 Md. 54, 60, 344 A.2d 422, 427 (1975) (quoting *Consolidated Gas, Elec. Light & Power v. State ex rel. Smith,* 109 Md. 186, 203, 72 A. 651, 658 (1909)). *See also* Md. Rule 5–702. Yet, experts cannot simply hazard guesses, however educated, based on their credentials. Instead, expert testimony must be sufficiently definite and certain to be admissible, for " 'neither the Courts nor the juries are justified in inferring from mere possibilities the existence of facts, and they cannot make mere conjecture or speculation the foundation of their verdicts.' " *Id.* at 61, 344 A.2d at 427 (quoting *Ager v. Baltimore Transit Co.,* 213 Md. 414, 421, 132 A.2d 469, 473 (1957)). Speculative testimony must thus be excluded as incompetent. Furthermore, Rule 5–702 requires that expert testimony be sufficiently grounded in fact. *See also Bentley v. Carroll,* 355 Md. 312, 337, 734 A.2d 697 (1999) (citing *Bohnert v. State,* 312 Md. 266, 539 A.2d 657 (1988)). Here, the only applicable facts adduced were the date of diagnosis and the size of the tumor, neither of which would infer a conclusion stronger than the one Dr. Gabrielson rendered. In summary, a sole expert's bare comment that a tumor *could have* existed prior to the effective date of the cap statute fails to meet the burden this Court placed on a plaintiff in *Walatka,* "to produce *evidence that is probative* with respect to when the plaintiff's disease came into existence . . . ." *Id.* at 333, 725 A.2d at 589 (emphasis added).

*Walatka* also addresses this Court's concern at the heart of our jurisprudence on the damages cap: to remain true to the legislature's goals in limiting noneconomic damages. *See, e.g., Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102 (1992) (upholding cap as rationality related to the public policy goal of reducing insurance costs). "Given this legislative mandate and its purpose, application of the cap must logically be viewed

as preferable to non-application." *Walatka*, 125 Md.App. at 329, 725 A.2d at 587.

### *Conclusion*

In conclusion, the single shred of testimony offered by the plaintiffs to address whether Mr. Wyche's disease arose before July 1, 1986, is too insubstantial, as a matter of law, even to meet their burden of production, much less prove that the damages cap should not apply. The court below erred when it found the opposite to be true. Viewing Dr. Gabrielson's testimony in the light most favorable to Porter Hayden, as the court should have done under Md. Rule 2–519(b), the testimony at best shows that the cancer could have originated on either side of the cap date. Because they gave the court nothing more, the Wyches failed at the threshold to present evidence that even raises a jury issue. We thus remand the case as we did in *Walatka* with instructions to apply the cap on noneconomic damages.

**JUDGMENT VACATED. CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY.**

**COSTS TO BE PAID BY APPELLEES.**